James Leonard **CAVERLY**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19957.

United States Court of Appeals,
Eighth Circuit.

July 17, 1970.

Harold A. Halgrimson, Fargo, N. D., for appellant.

Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for appellee; Harold O. Bullis, U. S. Atty., Fargo, N. D., on the brief.

Before VOGEL, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

James Leonard Caverly claims to be a conscientious objector, and he refused induction. The government prosecuted him for violating 50 U.S.C.App. § 462. The district court, sitting without a jury, convicted him.[1] He appeals. The issue before us, which the district court determined adversely to Caverly, is whether Caverly's Selective Service file reflects a basis in fact which supports his classification and eligibility for induction into the armed services.

We review with brevity the essential facts. At age eighteen, Caverly declared in his initial Selective Service questionnaire: "If I should find it necessary to fight or give my life that it [my country] may stand I shall most willingly do so." Approximately sixteen months la-

ter, immediately after undergoing a pre-induction physical examination, the defendant wrote to his draft board:

> For some time now I have undergone an internal struggle of conscience. At the pre-induction physical the medic asked why I haven't registered as a pacifist. At that moment I couldn't answer.

> I have now come to a disision (sic). I hope that God is on my side. After much tribulation my soul has deamed (sic) that I register as a conscientious objector.

He amplified this change of heart in additional statements contained in a special Selective Service form (SSS 150) utilized by those claiming to be conscientious objectors. He declared further that he opposed war because God is the only power allowed revenge, not man. He ascribed these newly-found beliefs to his reading of philosophy, his early instruction in the catechism of the Roman Catholic Church and his "personal feelings". After reopening his prior I-A classification, Local Selective Service Board No. 9, Fargo, North Dakota, listened to Caverly personally and denied his claim. Caverly appealed his classification to the State Appeal Board on March 29, 1967. In forwarding Caverly's file to the State Appeal Board, Local Board No. 9 enunciated several specific reasons for denying Caverly's classification. It wrote:

> After a personal appearance before this Local Board we strongly feel that subject registrant should be retained in Class. I-A for the following reasons:

> 1. He left the impression that he was wholly insincere in his request for a I-O Classification.

> 2. At no time did he show any basis for a conscientious objection other than a personal moral code.

> 3. His religious training by his admission was very elementary and his present occupational status gives rise

1. United States v. Caverly, 302 F.Supp. 757 (N.D.1969).

to sincere doubts by this board that his religious sincerity is practiced in his daily life.

It is our belief that his immediate induction would solve the registrant's social problems and materially aid his mental maturation processes.

■■ Given these reasons for local board action, we find ourselves in a quandary in reviewing Caverly's conviction. His file lends support to the first ground, that of insincerity, stated in the board's letter. Caverly statements to the board during his personal appearance, that the Fargo narcotics syndicate was out to "get him", that another person seeking vengeance placed a "price on his head",[2] as well as an earlier statement to the board that the FBI knew about somebody trying to murder him, seem unbelievable on their face, cast doubt upon his credibility and afford a basis in fact for retaining him in a I-A classification. See Welsh v. United States, 398 U.S. 333, 342, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Batterton v. United States, 260 F.2d 233, 237 (8th Cir. 1958). Cf. United States v. Abbott, 425 F.2d 910 (8th Cir., 1970). The letter, however, states three other reasons for rejecting Caverly's conscientious objector claim, each resting upon an unacceptable basis. Reliance by the local board upon its belief that military service would clear up Caverly's social problems and hasten his reaching maturity rests upon an unlawful basis. Additionally, in our review of Caverly's Se-

lective Service file, we find no basis in fact supporting the board's reasons numbered 2 and 3 in the above-quoted letter.

■ With regard to paragraph numbered 2, an examination of the SSS Form 150, which Caverly submitted to his local board indicates that his conscientious objection to war in any form rested at least in part upon his religious training and faith in a Supreme Being; views, which, if sincerely held, fall within the broad dimensions of *Welsh, supra*, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and the provisions of 50 U.S.C.App. § 456(j). See also United States v. Levy, 419 F.2d 360 (8th Cir.1970); United States v. James, 417 F.2d 826 (4th Cir. 1969); United States v. Haughton, 413 F.2d 736, 741 (9th Cir.1969). The expressions of the board's reasoning contained in the paragraph numbered 3 of its letter affords no basis to reject Caverly's claims. The extent of religious training need not measure the depth of religious conviction. In United States v. Hesse, 417 F.2d 141, 146 (8th Cir.1969), we said that "one does not have to be a theologian" to hold sincere religious conviction. See *Levy, supra*, 419 F.2d at 367. We also fail to see how evidence of Caverly's occupational status as a general casual laborer or as a booking agent for dance bands serves to negate the sincerity of his conscientious objection to war. Finally, of course, if the board sought to order Caverly's induction to solve his social problems or to correct his immature reasoning processes, such action carries no sanction of the law. See, e.g., Gutknecht v. United States,

---

2. A report of the registrant's March 20, 1967, personal appearance before the local board, signed by Caverly, recites: "This Registrant is making a personal appearance from a 1-A Class. on the grounds that he is a Conscientious Objector—

—hunting wild game makes him sick—
—will serve his country—but not in the military—
—hasn't defended himself since he was 16—walks away—

—works for an agency (Bobmar Enterprises) that books bands—
—Narcotics syndacate in fargo is out to 'get him' because he knows who is selling it here and in Mpls.—Girl in town is 8 months PG—swears he has never even met her but her brother thinks he is responsible and has put a 'price on his head' of 3 thousand—" (sic)

See fn. 4, *infra*.

396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); Oestereich v. Selective Service System Local Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

■ Simply stated, from this record, we cannot tell on what basis the board acted and, thus, we are unable to say that a basis in fact supported its determination that Caverly should be denied reclassification from I-A to that of a conscientious objector. Under such circumstances, Caverly's conviction cannot be sustained. See Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); James, supra, 417 F.2d 826, 832; Haughton, supra, 413 F.2d 736, 742–743; Gatchell v. United States, 378 F.2d 287, 292–293 (9th Cir. 1967); United States v. Jakobson, 325 F.2d 409, 416–417 (2d Cir.1963), aff'd, Seeger, supra, 380 U.S. 163, 85 S.Ct. 850; United States v. Stepler, 258 F.2d 310, 317 (3d Cir.1958); United States v. St. Clair, 293 F.Supp. 337, 344 (E.D.N.Y.1968); United States v. Englander, 271 F.Supp. 182, 184–185 (S.D.N.Y. 1968); compare United States v. Owen, 415 F.2d 383, 388–389 (8th Cir.1969).

The Fourth Circuit, in James, supra, reversing a conviction under circumstances of this kind, explained:

> Where the local board's conclusion may be explainable upon alternate grounds, both legally acceptable and unacceptable, the risk is too great that we would place an imprimatur upon an insupportable basis of decision if we were to accept the government's contention [that the local board simply did not believe defendant's protestations of conscience]. 417 F.2d at 832.

Judge Weinstein, in St. Clair, supra, observed:

> Where two grounds for decision—one correct and one incorrect—are asserted and where there is no way of knowing which was relied upon, the courts may not assume that the cor-

rect one was used. 293 F.Supp. at 344.

■ The rejection of Caverly's claim to be a conscientious objector on his administrative appeal, although in a de novo proceeding, cannot serve to correct the discrepancy in this case. The State Appeal Board under the statute and regulations then in existence (50 U.S.C.App. § 456(j) (1951), 32 C.F.R. § 1626.25 (1964)) requested an F.B.I. resume and a recommendation from the United States Department of Justice.[3] The local (Fargo, North Dakota) Hearing Officer interviewed Caverly and found him to be sincere, although he felt his objection seemed based on "political revolt" rather than on religious grounds. He recommended Caverly's classification as a conscientious objector available for noncombatant service (I-A-O). The Chief of the Conscientious Objector Section of the Department of Justice, who signed the Department report submitted to the State Appeal Board, disagreed and recommended that Caverly be denied classification as a conscientious objector. The latter reasoned that Caverly's change of attitude toward fighting for his country demonstrated insincerity. The validity of such reasoning may be subject to challenge as applicable to a young man whose religious and moral values are subject to abrupt change as he reaches manhood. Davis v. United States, 410 F.2d 89 (8th Cir.1969).

The State Appeal Board gave no reason for its determination to continue Caverly's I-A classification. In the light of the conflict of opinion upon the issue of sincerity between reviewing officers acting for the Department of Justice, we entertain little doubt that the appeal board in this case relied at least in part upon the ambivalent views of the local board. See Owen, supra, 415 F.2d at 388–389; Stepler, supra, 258 F.2d at 316–318.

While Caverly's conviction must be reversed, we intimate no view concerning

---

3. For similar proceedings under the same regulations and statutes, see Hesse, supra, 417 F.2d 141. and Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968).

his entitlement to a classification as a conscientious objector. The local board is free to consider that question anew.[4]

Reversed.

---

4. In determining Caverly's appropriate classification, the local board grappled with a Selective Service record reflecting statements of conscientious objection to war, as well as other somewhat bizarre and unexplainable comments. For example, Caverly claimed that someone was "trying to murder" him and, thus, he left no forwarding address at his parents' home and failed to receive communications from the board. At his personal interview with local board members concerning his claim to be a conscientious objector, he orally stated that the Fargo narcotics syndicate was out to "get him" and that he had a "price on his head". As we have already noted in the text, such statements and demeanor may adversely reflect upon Caverly's credibility. They also may denote irrationality. See fn. 2, *supra*.

We note that the trial judge, as a result of statements defendant made in open court, questioned Caverly's competence to understand the proceedings against him and assist in his own defense. The trial court, sua sponte, ordered Caverly examined by the Federal Medical Center at Springfield, Missouri. Its psychiatrists, although determining that Caverly possessed sufficient competency to stand trial, described him as emotionally unstable and immature, an individual who possesses only a tenuous hold upon reality and who, under stress, "could decompensate into an overt psychosis."

The contents of such report may aid Selective Service officials in classifying Caverly. Should he be retained as I–A, the report may bear upon his mental qualifications to serve in the military forces. The trial court, thus, may choose to make such report available for Caverly's use within the Selective Service System.