**UNITED STATES of America,
Appellee,**

v.

**Jerry Charles RUTHERFORD, Appellant.**

**No. 20137.**

United States Court of Appeals,
Eighth Circuit.

Feb. 3, 1971.

Harry B. Reese, Kansas City, Kan.,
for appellant.

Richard J. Barry, Asst. U. S. Atty., S. D. Iowa, Allen J. Donielson, U. S. Atty., S. D. Iowa, for appellee.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

NEVILLE, District Judge.

Defendant was indicted under 50 App. U.S.C. § 462(a) for failure to report for and submit to induction into the Armed Services of the United States. A jury returned a guilty verdict and his subsequent motion for judgment of acquittal was denied. We reverse the conviction on the grounds that there was and is no basis in fact disclosed in defendant's Selective Service file to warrant a denial of his prima facie showing of entitlement to a conscientious objector status.

On May 13, 1968, substantially four years after his original registration under the Military Selective Service Act Rutherford requested conscientious objector status by filing a completed SSS Form #150 with his Local Board. After reopening his classification the Board denied his claim. Appeals to the State Appeal Board and to the Presidential Board were unsuccessful. None of these bodies made findings or indicated with any specificity why Rutherford's application was denied.[1]

Since the registrant's application established a *prima facie* case for conscientious objector status under 50 U.S.C. App. § 456(j) and its current judicial construction,[2] it is clear—and the United States Attorney so agrees—that denial was based and could only have been based upon a conclusion that the registrant's claim was insincere.

■ 50 U.S.C. App. § 460 allows judicial review of Selective Service action to assure the registrant that administrative decisions affecting his classification have some basis in fact. The Eighth Circuit has consistently recognized that this is a very narrow standard of review,[3] and the Court's role in a case such as this is limited to determining as a matter of law whether a Selective Service Board could infer insincerity from the evidence properly before it[4] and disclosed in or made a part of the registrant's Selective Service file.

■ While insincerity may be established either by objective facts apparent from documents in the registrant's file which tend to indicate inconsistency or bad faith, or by subjective elements such as the demeanor of the registrant at personal appearance before the board, or by some combination of the two, it is settled law that a board finding turning on factors not apparent from an examination of the file will not survive judicial review in the absence of some specific written findings or notations to

1. The court ignores certain markings on written statements supplied by the registrant to his Local Board. The origin and import of such markings are not clear, and the United States Attorney admitted at the oral argument that they may well have been made subsequent to the decisions by each of the Boards by his own office or by Selective Service personnel. They cannot, at any rate, be taken to represent "findings" indicating the specific grounds for any of the Boards' conclusions.

2. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). *Cf.* Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Levy, 419 F.2d 360 (8th Cir. 1969).

3. Packard v. Rollins, 422 F.2d 525 (8th Cir. 1970); United States v. Hesse, 417 F.2d 141 (8th Cir. 1969); Batterton v. United States, 260 F.2d 233 (8th Cir. 1958).

4. "Sincerity" is not, as the United States Attorney would here characterize it, a question of evidentiary fact. It is, rather, a question of whether, given certain uncontested evidentiary facts, it is legally permissible to draw an inference of insincerity therefrom. The "clearly erroneous" standard applies to the review of the original tribunal's findings of fact, but does not apply to the review of legal determinations such as whether established objective facts can be held to demonstrate insincerity. See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

support it. As this court recently articulated this requirement:

"* * * A local board may find that an applicant lacks sincerity in his beliefs because his demeanor demonstrates a shiftiness or evasive attitude which would substantiate unreliability. Witmer v. United States, supra 348 U.S. at 382, 75 S.Ct. 392. However, this cannot serve as a basis-in-fact for an appeal board to reject a conscientious objector claim unless there exists some disclosure of this finding of unreliability by the local board on the applicant's selective service record."

United States v. Abbott, 425 F.2d 910, 913-914 (8th Cir. 1970). Since there are no such findings here, we can only sustain the denial of Rutherford's conscientious objector claim if we find some basis in fact for the conclusion of insincerity in the objective evidence in his Selective Service file. United States ex rel. Hemes v. McNulty, 432 F.2d 1182 (7th Cir. 1970).

The government contends that insincerity may be inferred from (1) Rutherford's failure to assert his claim when he originally registered at age 18, or (2) his failure to be baptized in the organized religion of Jehovah's Witnesses which he alleges to be the basis of his religious opposition to military service.

On or about July 6, 1964, upon reaching his eighteenth birthday, Rutherford completed his original Selective Service Questionnaire, SSS Form 100, which then included the following question:

"Series VIII.—CONSCIENTIOUS OBJECTOR (DO NOT SIGN THIS SERIES UNLESS YOU CLAIM EXEMPTION AS A CONSCIENTIOUS OBJECTOR)

By reason of religious training and belief I am conscientiously opposed to participation in war in any form and hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150).

. . . . . . . . . . . . . . . . . .

(Signature)          "

He did not answer the above question, possibly anticipating his eligibility for a 2-S deferment upon entering the University of Kansas later that summer. In any event, for nearly four years, from October 1964 until June 1968, he held a 2-S deferment. In May 1968, apparently aware that his 2-S eligibility was about to lapse, Rutherford made application for conscientious objector status by submitting SSS Form 150 to his Local Board. In this Form he professed conscientious objector beliefs which matured or crystallized some years prior to the date of its filing.[5] The government argues that his failure to bring this attitude to the attention of the Local Board in his original registration supports an inference of insincerity. In United States v. Bornemann, 424 F.2d 1343 (2d Cir. 1970), the Second Circuit dealt at length with this issue:

"Section 465(b) of 50 App. U.S.C., the statute in force at all times during the period when Bornemann's classification was in question, provided that '[i]t shall be the duty of every registrant to keep his local board informed as to * * * changes in status as required by such rules and regulations as may be prescribed by the President.' The applicable regulation, 32

---

5. The registrant's answer to Form 150's Series II, question 3 states in part: "The uncertainty as to my stand on war which I possessed while in high school became a strong certainty as I matured spiritually in a university experience. This decision was made according to my conscience, and has been gradually burning within me until it is now time for me to stand up and witness for peace."

While it is thus doubtful and not perfectly clear from the record that the registrant's beliefs had crystallized prior to the filing of his original registration Form 100 in 1964, apparently the conclusion of the Board was that his beliefs crystallized before 1964 and the parties have not challenged that conclusion here.

C.F.R. § 1625.1(b), requires that '[e]ach classified registrant * * * shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification * * *.' In order to determine which facts 'might result in the registrant being placed in a different classification,' it is necessary to examine 32 C.F.R. § 1623.2. This regulation specifies 'that when grounds are established to place a registrant in one or more of the classes listed in the following table [which lists all classifications other than I–A (available for service)], the registrant shall be classified in the lowest class for which he is determined to be eligible.' * * * Since these two regulations are to be read *in pari materia,* we are compelled to conclude that the facts which 'might result in the registrant being placed in a different classification' and which each registrant must therefore bring to the attention of his board promptly are those which could result in his being placed in a lower classification. Any other construction would mean that already busy boards would be required to receive, record, consider and file reams of immaterial information having no bearing on the classification then held by a registrant, an intention the drafters of the regulations could scarcely have entertained." 424 F.2d at 1347.

The recent decision of this court in United States v. Abbott, 425 F.2d 910 (8th Cir. 1970), followed *Bornemann* and appears to dispose of this issue in the case at bar. In *Abbott*, a registrant first claimed conscientious objector status after he became ineligible for deferments as a college student (2–S) and as a minister (4–D). While the Selective Service file established that his claim matured subsequent to his original registration (so that failure to claim I–O status in response to the Series VIII Question was irrelevant) a subsequent classification questionnaire completed two years after original registration and apparently after the crystallization of his beliefs while in a seminary, included a blank in which the registrant was asked to indicate whether he claimed to be a conscientious objector. Abbott left that space blank.[6] The court held that:

" * * * when a registrant makes application at the time when his beliefs become 'relevant' to his classification, then lateness of the claim cannot affect the registrant's sincerity. Abbott's earlier presentation of his conscientious objector's claim, like Bornemann's, would not have resulted in his being classified as a conscientious objector since he was entitled to a deferment on the basis of a lower classification on other grounds." 425 F.2d at 915.[7]

Our adherence in this Circuit to the *Bornemann* rule was also expressed in United States v. Cummins, 425 F.2d 646, 650 (8th Cir. 1970):

"* * * The fact that Cummins sought other classifications and did not originally seek a I–O classification cannot by itself be a basis for denial of such a classification. See United States v. Owen, 415 F.2d 383 (8 Cir. 1969); United States v. Bornemann,

---

6. At that time Abbott's Board was using SSS Form 100 for such purposes.

7. In *Abbott*, the registrant's conscientious objection matured subsequent to his original registration, while he was classified 2–S. Thus, while the registrant in this case was confronted with an opportunity to express his claim on SSS Form 100 at original registration, the registrant in *Abbott* was not. From this, the government contends that *Abbott* does not apply because it held only that a registrant cannot be required to take an *affirmative* step to assert a claim not then relevant to his classification. A closer examination of the facts in *Abbott* reveals that the registrant there was indeed confronted with an opportunity to claim his I–O subsequent to crystallization. *Abbott* is, then, on all fours . with the instant case in this respect, and the government's argument is without merit.

424 F.2d 1343 (2 Cir. 1970)." 425 F. 2d at 650.

See also, United States v. Lemmens, 430 F.2d 619, 624 (7th Cir. 1970); Capobianco v. Laird, 424 F.2d 1304 (2nd Cir. 1970); United States ex rel. Hemes v. McNulty, *supra*, 432 F.2d at 1187.

Since the law does not require such an early assertion of a claim then not relevant, any number of considerations might logically enter into a registrant's decision not to claim the I–O on his original registration questionnaire. For some registrants, the stigma of conscientious objection or the difficulty of assembling the application may cause a sincere and logical reluctance to assert the claim when the regulations clearly preclude its being granted because lesser deferments are available. See, *e.g.*, United States v. Broyles, 423 F.2d 1299, 1303 (4th Cir. 1970).

■ We must read *Abbott, Cummins,* and *Bornemann* to hold that a registrant need not assert his I–O claim on the original Form 100 Questionnaire when he is aware that he qualifies for a lesser deferment. It follows that a Board faced with a failure of a I–O applicant to have claimed the I–O at his original registration or within 10 days of its crystallization may not draw an infer-

ence of insincerity from that circumstance alone.[8]

The government's second attack on defendant's sincerity relates to his nonbaptism. A review of Rutherford's application for exemption as a conscientious objector (SSS Form 150) indicates that his opposition to military service is a product of his upbringing and membership in the religious organization known as the Jehovah's Witnesses. He appears to rely exclusively upon the religious beliefs which flow from his affiliation with this sect to support his claim. Despite his reliance upon what is alleged to be a deep and long standing relationship with his church, Rutherford has elected for whatever reason[9] not to be baptized as a Jehovah's Witness.

The government contends that insincerity can reasonably be inferred from this circumstance because lack of baptism is logically inconsistent with a C–O claim bottomed on formal religious affiliation. By so arguing, the government is really asking this court to declare as a matter of law that baptism, to a Jehovah's Witness, is or should be a prerequisite to the earnest practice of that religion; and that in testing the sincerity of a registrant's claim the Selective Service System may properly dictate the relative significance of extremely personal religious rituals.[10]

8. This holding is not intended to impair the validity of cases which have permitted a Board's inference of insincerity from a registrant's failure to assert the I–O claim until substantially after it had become relevant to his classification. See, *e. g.*, United States v. Messinger, 413 F.2d 927 (2d Cir. 1969); Salamy v. United States, 379 F.2d 838 (10th Cir. 1967).

9. The reason for his failure to be baptized does not appear in the Selective Service File except as part of his answer to Series IV, Question 2–B, of SSS Form 150:
"I am an associate member. I claim this membership in this manner, because if I were a dedicated member (baptized), I could not preform [sic] any civil service."

The proceedings in the District Court included some inquiry into the registrant's reasons for failure to be baptized and would seem to harmonize that circumstance with his sincere obedience to the tenets of his church. It is obvious, however, that the testimony there given was not a part of the record upon which the Selective Service System based its decision and cannot be considered here.

10. The issue here is not, of course, whether the statutory exemption is sufficiently broad to include registrants who sincerely profess belief in a church to which they do not belong or from which they have not sought baptism. That question has been addressed generally by the Supreme Court in the *Seeger* and *Welsh* decisions, *supra*, and by the Eighth Circuit in Packard v. Rollins, 422 F.2d 525 (8th

The sincerity of a conscientious objector's claim is not to be determined by the extent to which he has conformed to the forms of his church nor by his ability to articulate its dogma. Just as a registrant does not establish the sincerity of his claim merely by demonstrating that he is a baptized member of an organized religion which dogmatically opposes participation by its members in the military service,[11] a registrant's decision not to conform chapter and verse to the modes of his chosen religion is not *per se* indicative of insincerity. As this court said in Caverly v. United States, 429 F.2d 92 (8th Cir. 1970):

"* * * The extent of religious training need not measure the depth of religious conviction. In United States v. Hesse, 417 F.2d 141, 146 (8th Cir. 1969), we said that 'one does not have to be a theologian' to hold sincere religious convictions. See Levy, supra, 419 F.2d at 367." 429 F.2d at 94.

In United States v. James, 417 F.2d 826 (4th Cir. 1969), a registrant claimed exemption as a conscientious objector on the basis of his affiliation with the Jehovah's Witnesses but had not become a formal member of the church. The court refused to recognize that circumstance as an adequate basis in fact for denial of his claim.

"* * * Indeed, in the instant case, we believe that defendant's candid statements both to his local board and at the trial that he was not formally a member of the Jehovah's Witness sect and that 'there is more to becoming a member than just joining' is an indication of his sincerity, rather than the contrary." 417 F.2d at 831.

The case at bar appears to be on all fours with United States v. Harris, 302 F.Supp. 1194 (D. Or. 1968), where it was held that non-baptism will not support an inference that the registrant does not sincerely embrace his church.

"Defendant's claim was rejected because he had not been baptized as a Jehovah's Witness. I do not think this provides a basis in fact for the local board's action. At the trial, defendant explained that one cannot be baptized until he satisfies himself that he is 'strong enough.' Until baptism, he is not a true member of the faith. Although defendant studied the Bible and Watchtower Tracts at home, and attended religious meetings, he had not yet convinced himself that he could be baptized.

The time of baptism (and hence membership) is left entirely to the individual. If defendant was not sincere he could have been baptized and would thus have been able to claim membership in his Form 150. Instead, not convinced that he was ready, defendant continued to attend religious meetings and study the Bible and Watchtower Tracts at home. It would be difficult to find evidence more persuasive of defendant's strict allegiance to the requirements of his religion. The local board cannot rely on defendant's lack of baptism without some evidence that it should interpret his decision to detract from, rather than add to, the strength of his claim. The file contains no such evidence, nor any other evidence sufficient to provide a basis in fact for defendant's I–A classification." 302 F. Supp. at 1196.

It would presumably be easy for this registrant to have submitted to baptism, despite his personal scruples, in order to satisfy a local board which held the view that no non-baptized Jehovah's Witness sincerely believes in his religion. In

Cir. 1970) ; United States v. Levy, 419 F.2d 360 (8th Cir. 1969) ; United States v. Owen, 415 F.2d 383 (8th Cir. 1969). Nothing in the instant case suggests that the Board felt that an unbaptized registrant cannot come within the terms of § 456(j) ; it was clearly of the opinion

that his failure to be baptized was affirmative evidence that his claim was insincere.

11. United States v. Brown, 423 F.2d 751 (3d Cir. 1970) ; Olguin v. United States, 392 F.2d 329 (10th Cir. 1968).

fact, as the case of Thompson v. United States, 380 F.2d 86 (10th Cir. 1967), illustrates, the board might properly have inferred insincerity if the registrant had been baptized on the eve of his C–O application.

Like the court in *Harris, supra,* the Second Circuit has indicated that the mere fact that a registrant has not been baptized in the church upon which he relies for his claim does not, by itself, demonstrate that his claim is insincere. In United States v. Corliss, 280 F.2d 808 (2d Cir. 1960), cert. denied 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960), the court observed at page 813:

"* * * the government emphasizes Corliss' statement in his letter to the Appeal Board that he had not yet felt prepared to take the important step of baptism; again the context makes it plain that Corliss regarded this as equivalent to initiation into the ministry and the statement strikes us as a display of candor rather than the reverse."

 Rutherford stated quite candidly in his SSS Form 150 that he was not baptized. That fact was not wrung out of him in the course or investigation or during a hearing, where its context might give it the appearance of an admission of a fact which the registrant had hoped to conceal. There is nothing in the record to suggest that Rutherford offered a specious or insincere explanation for his non-baptism. In short, on this record it cannot be held as a matter of law that a man who claims conscientious objection on the basis of his membership in an organized religion can be called insincere simply because he has opted not to undergo the ritual of baptism.[12]

The registrant also challenges the Selective Service System's failure to render written findings to support its conclusion that his claim was insincere. This Circuit previously has ruled that such findings are required by the due process clause when the Board chooses to rely exclusively upon subjective evidence not apparent from documents in the registrant's file. United States v. Abbott, *supra.* In the instant case, the registrant seeks a ruling which would broaden the *Abbott* holding to apply to all cases in which exemption is denied on the basis of a finding of insincerity. Inasmuch as we have found that there was no basis in fact for the denial of this registrant's claim, we deem it unnecessary to reach this constitutional issue.

Reversed and remanded with instructions to enter a judgment of acquittal.

---

12. It is clear, on the other hand, that inquiry into the extent to which the registrant has conformed to the rituals and constructions of the religion he espouses is appropriate where the claim is to a 4–D (ministerial) exemption, because the statute requires that the applicant establish that he stands in the relation of a minister to a congregation. See, *e. g.,* Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Application of Kanas, 385 F.2d 506 (2d Cir. 1967); United States v. Willard, 312 F.2d 605 (6th Cir. 1963), cert. denied 372 U.S. 960, 83 S.Ct. 1014, 10 L.Ed. 2d 13.