**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Craig Luther IVERSON, Defendant-
Appellant.**

**No. 71–1262.**

United States Court of Appeals,
Eighth Circuit.

Jan. 31, 1972.

Stephenson, Circuit Judge, concurred in result and filed opinion.

Joseph Goldberg, Albuquerque, N. M., for defendant-appellant.

Eugene K. Anthony, Asst. U. S. Atty., Harold O. Bullis, U. S. Atty., Fargo, N. D., for plaintiff-appellee.

Before VAN OOSTERHOUT, ROSS, and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from the conviction of Craig Luther Iverson for refusing to submit to induction into the Armed Forces in violation of 50 App. U.S.C. § 462(a). Iverson had claimed to be entitled to conscientious objector classification prior to receiving his notice to report for induction, but this claim was denied by the local board and by the State Appeal Board. The case was tried to the trial court on the sole issue of whether or not Iverson should have been granted classification as a conscientious objector. The trial court upheld the board's denial of this classification and entered a judgment of conviction. We reverse and remand with directions to enter a judgment of acquittal.

The Form 150, claiming conscientious objector classification, was filed by Iverson in June 1970, over a year after losing his II-S deferment and being classified I-A. On July 15, 1970, Iverson personally appeared before the board for about twenty minutes, at which time he was questioned concerning his beliefs. One of the questions asked related to his opinion on campus violence. He replied "in a low voice" that he did not have an opinion one way or another since he was not involved. In response to another question, Iverson stated that the only way he could "connect" with the military would be as a medic. And when asked whether he would ever change his

mind in the future about any of these questions, he answered that he might, depending on the circumstances and changing times. Except for Iverson's Form 150, there is no other evidence in the Selective Service file bearing upon his sincerity in making the claim or upon the question of whether his beliefs stemmed from either a moral or an ethical basis. The local board voted not to change the classification "since beliefs are essentially political, sociological or philosophical views obtained while at U. N.D. [University of North Dakota]." This determination was upheld August 27, 1970, by the State Appeal Board, without a hearing, on the basis of Iverson's Selective Service file. The notice to report for induction and Iverson's refusal to submit followed.

We must first determine whether or not the statements Iverson set forth on the Form 150 were sufficient to establish a prima facie claim for exemption as a conscientious objector. A careful examination of these statements convinces us that a prima facie claim was established under the guidelines set forth in United States v. Seeger, 380 U. S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Indeed, the Government did not contest the fact that a prima facie claim had been established, and the trial court's memorandum opinion acknowledges this when it states as follows:

"Turning then to the Defendant's cover sheet, the Government does not contest the Defendant's contention that he made a prima facie showing that he was entitled to a I-O classification when he submitted the completed SSS 150 Form. However, the Government takes the position that the Board was entitled to, and did, question the sincerity of the Defendant's beliefs as evidenced by their letter of July 8th giving him an opportunity for a personal appearance before the Board."

The trial court properly stated the rule that "[o]nce the registrant presents a prima facie case which would, if true, entitle him to be excepted from I-A classification, a basis in fact for any denial thereof must appear from the record." However, the trial court then held that the record did support the determination that the conscientious objector classification should be denied, stating as follows:

"The narrow question here presented is whether, after the personal appearance of the Defendant before the Local Board, the cover sheet, Exhibit 1, taken as a whole, contains a basis in fact for his I-A classification. The Board's stated opinion that the Defendant's beliefs were essentially political, sociological or philosophical views, make it apparent that the Board members concluded that his beliefs did not stem from either a moral or an ethical basis and that his beliefs were not, in fact, sincerely held. Welsch [Welsh] v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308; Seeger v. United States [United States v. Seeger], 380 U.S. 163, 85 S. Ct. 850, 13 L.Ed.2d 733.

"The decision of the Selective Service Board and of the State Appeals Board to classify the Defendant I-A was amply justified since the cover sheet, Exhibit 1, discloses evidence of his insincerity, such as the lateness of his request for I-O status, his attitude and demeanor when appearing before his Local Board and his equivocal statement to the Board that he might change his mind with respect to certain questions asked of him 'depending upon the circumstances and changing times.'"

At the trial, Local Board Memorandum No. 107 of the National Headquarters Selective Service System was admitted into evidence after the Executive Secretary testified that the local board had this memorandum in its possession prior to the July 15, 1970, hearing. The

Memorandum provides in pertinent part as follows:

"EXCLUSIONS FROM CLASSES I-O AND I-A-O

"16. Persons whose beliefs are 'essentially political, sociological, or philosophical views, or a merely personal moral code' are ineligible to be classified as a conscientious objector. Such persons consist of two groups:

(a) Those with beliefs of religious, moral, or ethical nature, but whose beliefs are not deeply held, and

(b) Those whose objection to war does not rest at all upon moral, ethical, or religious principles, but instead rests solely upon consideration of policy, pragmatism, or expediency."

 The trial court held there was a basis in fact in the record to support the conclusions that: (a) Iverson's beliefs were not sincerely held; and (b) his beliefs did not stem from a moral or an ethical basis. We cannot agree that there was a basis in fact in the record to support either conclusion.

This Court has held that "before a conscientious objector classification may be denied on the ground that the applicant's beliefs are based upon 'political, sociological and philosophical' views or a merely personal moral code, those factors must be the *sole* basis of his claim for the classification." Packard v. Rollins, 422 F.2d 525, 527 (8th Cir. 1970). We have further held that "mere *ipse dixit* disbelief [of the sincerity of the applicant] is not sufficient support for such a determination without affirmative evidence to measure contradiction." United States v. Abbott, 425 F.2d 910, 913 n.4 (8th Cir. 1970). Thus, it is necessary that some *affirmative* evidence indicating insincerity or bad faith be shown to rebut Iverson's claim to conscientious objector status. United States v. Owen, 415 F.2d 383, 389 (8th Cir. 1969). And such factors must be apparent from an examination of the file.

United States v. Rutherford, 437 F.2d 182, 183 (8th Cir. 1971).

We turn now to an analysis of the evidence in the file relied upon by the trial court to support its determinations that Iverson's beliefs were not sincerely held and that they did not stem from an ethical or moral basis. The first basis was the lateness of the request. However, "when a registrant makes application at the time when his beliefs become 'relevant' to his classification, then lateness of the claim cannot affect the registrant's sincerity." United States v. Abbott, *supra,* 425 F.2d at 915; United States v. Rutherford, *supra,* 437 F.2d at 185. Iverson made his claim prior to receiving his notice to report for induction, and there is no evidence in the file to indicate that his timing was based on expediency rather than on a late crystallization of his views.

The second point was "his attitude and demeanor when appearing before the Local Board . . . ." There is nothing in the file to indicate a poor attitude or demeanor except a notation by the Executive Secretary that he answered "in a low voice," which is not necessarily indicative of a poor attitude or demeanor.

The third point was Iverson's "equivocal statement to the Board that he might change his mind with respect to certain questions asked of him 'depending upon the circumstances and changing times.'" That answer could have related to any of the board's questions, including the one relating to his opinion on campus violence which had little, if any, bearing on his claim for conscientious objector classification. Moreover, this Court has stated in United States v. Owen, *supra,* 415 F.2d at 390, that such a statement relates to a contingency and provides no inference as to the registrant's state of mind when the incident occurred.

The determination that Iverson's views did not stem from a moral or an ethical basis is completely contradicted by the statements made by the applicant in his Form 150; and there is no sub-

stantial evidence in the record of the type we have required, in the decisions hereinbefore cited, sufficient to rebut those statements.

The Government contends there is an inference that because the local board was cognizant of Memorandum No. 107, the board's conclusion that Iverson's beliefs were "essentially political, sociological or philosophical views obtained while at U.N.D." amounts to a meaningful finding that Iverson's beliefs were not sincere. The trouble with this contention is two-fold. First, the board's statement is merely a conclusion unsupported by evidence contained within the file. And second, the local board did not specify which of the two reasons set forth in the Memorandum it relied upon in reaching that conclusion.

Certainly, based upon the record, and the Government's conclusion that Iverson presented a prima facie claim, the board could not have found that Iverson's objections to war rested upon policy, pragmatism or expediency; and we have heretofore stated that there was no substantial evidence in the record to demonstrate that his views were insincere and not deeply held. But assuming, arguendo, that insincerity can be found from the record, the failure of the local board to state which of the two grounds it was applying is fatal under this Court's rule announced in Caverly v. United States, 429 F.2d 92, 95 (8th Cir. 1970), wherein we held:

> "Simply stated, from this record, we cannot tell on what basis the board acted and, thus, we are unable to say that a basis in fact supported its determination that Caverly should be denied reclassification from I-A to that of a conscientious objector. Under such circumstances, Caverly's conviction cannot be sustained."

For the reasons heretofore set forth, it is our judgment that there was no basis in fact in the record for the denial of conscientious objector status to Iverson. Judgment reversed with directions to enter a judgment of acquittal.

STEPHENSON, Circuit Judge (concurring in the result).

I concur in the result solely because I feel reversal is required under Sicurella v. United States, 348 U.S. 385, 391–392, 75 S.Ct. 403, 99 L.Ed. 436 (1955) and Caverly v. United States, 429 F.2d 92, 95 (CA 8 1970). Specifically, it is my view that reversal is in order because it cannot be determined which of the two grounds the local board applied in denying conscientious objector status to the defendant.