**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Curtis Allen HANSON, Defendant-Appellant.**

**No. 71–1528.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1972.

Decided May 15, 1972.

C. A. Frerichs, Frederick G. White, Waterloo, Iowa, for defendant-appellant.

Allen L. Donielson, U. S. Atty., John B. Grier, First Asst. U. S. Atty., Des Moines, Iowa, for plaintiff-appellee.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Curtis Allen Hanson, whose request for classification as conscientious objector was denied by his local board, was convicted by a jury on an indictment charging him with willfully and knowingly refusing to submit to induction in violation of 50 U.S.C. App. § 462, and was sentenced as a young adult offender under the Federal Youth Correction Act. This appeal is taken from the denial of Hanson's motion for judgment of acquittal, notwithstanding the verdict, and in the alternative, for a new trial.

The two principal questions raised on this appeal are 1) whether Hanson's Form 150 made a prima facie case for conscientious objector status, and 2) whether the failure of the local board to state the reasons for its refusal of the conscientious objector classification required the court to enter a judgment of acquittal notwithstanding the verdict. We answer both questions in the affirmative.

*Prima Facie Case*

■ The principal legal question to be decided in any case such as this is

whether or not there is a "basis in fact" for the classification given to the registrant. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

"The 'basis in fact' test actually involves two steps. At the threshold, the reviewing court must determine, on the basis of the registrant's submitted Selective Service Form 150 and supplemental material, whether the registrant has made out a prima facie case for entitlement to classification as a conscientious objector." United States v. O'Bryan, 450 F.2d 365, 368 (6th Cir. 1971). *See* United States v. Iverson, 455 F.2d 79, 81 (8th Cir. 1972); United States v. Wood, 454 F. 2d 765, 767 (4th Cir. 1972); United States v. Stetter, 445 F.2d 472, 477 (5th Cir. 1971).

The facts relating to the classification procedure utilized in this case are lengthy and complex, and we will recite only those relevant to the request for and denial of the conscientious objector classification. Suffice it to say that Hanson registered in 1964, and from that time until his refusal to submit to induction on July 21, 1970, there were several changes of classification and four orders to report for induction.

Hanson filed his Form 150 requesting conscientious objector (I–O) status on July 16, 1969. He signed the portion of the form which stated as follows:

"I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces, but am prepared to perform civilian alternative service if called. (Registrants granted this status are classified I–O.)"

He also supplemented that signed statement with additional information required by the form.[1]

On August 14, 1969, after a board meeting, a classification memorandum was placed in Hanson's file showing his classification to be I–A(3) and containing the notations "Does Not Warrant Reopening," and "If remain 1–A ask if he wishes to visit with the L.B." By letter, on August 14, 1969, the local board wrote Hanson the following:

"Please be advised your complete Selective Service file was reviewed by the local board members this date and after the review of new information submitted, the Black Hawk County Selective Service Local Board in session has determined no basis in fact is

---

1. When asked to describe the nature of his belief, Hanson wrote:
   "I believe all men are equal and all are brothers.
   I am against war and violence.
   I am a member of the Bahai World Faith."
   And when asked the source of his religious training and belief, he stated:
   "I acquired my beliefs before I joined the Bahai Faith. They weren't derived from the general religious training, but more so from my acquaintances and other surroundings. My parents obviously had a great effect, also such books by Kahil Gibran and Herman Hesse—I suggest you read their works!"
   In response to a question as to whether his beliefs would prohibit him from serving in a noncombatant function, Hanson noted:

"I guess my formal religion doesn't, but I feel it would be a moral sin to do anything for your war machine. I want to do constructive things and I want no part in participating in helping you destroy—Let me do good!!! Is that such a big request."
And when asked to list examples of expression of these views, he answered as follows:
   "Oh yes, many times—probably every day.
   Examples to me are meaningless.
   I hate war & death.
   I love people & life.
   I want to help people and promote life.
   I want no part of war & death
   This local board & all you people down there represent to me war & death & sin!"

present to warrant a reopening of your present classification.

However may we further advise if you would like to meet with the local board at their September meeting, you may have this privilege.

Please notify this office if you wish to appear and you will be notified of the date and time.

Your cooperation is appreciated."

The Board again wrote Hanson on September 10, 1969, and on October 8, 1969, giving him the opportunity to appear before the board on September 16 and October 14, respectively, but Hanson failed to appear at either session. On October 14, 1969, an SSS Form 119 was placed in Hanson's file stating that "Registrant notified to appear with local board on 14 October 1969 per letter of 8 October 1969. Registrant failed to appear at this meeting. Classification reopened. Remains 1–A(3) SSS 110 mld." Another classification memo was placed in his file indicating Hanson's classification remained 1–A(3).

Hanson notified the board that he wished to appeal the classification by letter dated November 8, 1969. On January 14, 1970, the state appeal board upheld the 1–A classification. On May 13, 1970, another Form 119 was placed in Hanson's file which indicated the local board reviewed the file again on that date and stated as follows:

"The local boards reason for denial of conscientious objector's claim was as follows:

The registrant did not present sufficient evidence in writing to uphold his claim for conscientious objection, also failure to appear before the local board to further discuss his feelings and beliefs to warrant change from his present 1–A classifiation to that of 1–O."

By letter of May 21, 1970, Hanson was advised of this action and given further instructions on reporting.

On July 8, 1970, Hanson met with the local board and answered questions concerning his beliefs, his schooling and problems relating to drugs. Another memorandum was filed indicating no change in classification. Then on July 9, 1970, he was ordered to report for induction on July 20, 1970.

Although certain events described above took place subsequent to the appeal to the State Appeal Board, for obvious reasons we must judge the legality of the classification on the basis of the action of the local board prior to the appeal.

During the period relevant to this case, 50 U.S.C. App. § 456(j), provided as follows:

"Nothing contained in this title . . . shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of *religious training and belief*, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

◼ In determining whether the Form 150 filed by Hanson made out a prima facie case for classification as a conscientious objector, we must apply the test laid down in 50 U.S.C. App. § 456(j), and the cases interpreting that statute. That test is whether, if the facts alleged in his Form 150 are true, Hanson is conscientiously opposed to "participation in all war," Gillette v. United States, 401 U.S. 437, 443, 91 S. Ct. 828, 28 L.Ed.2d 168 (1971), and whether his personal beliefs are held with the strength of religious conviction in his life, rather than stemming solely from political, sociological, or philosophical views. Welsh v. United States, 398 U.S. 333, 340–343, 90 S.Ct. 1792, 26 L. Ed.2d 308 (1970).

The form statement signed by Hanson included a statement that he is "conscientiously opposed to participation in war in any form." In other parts of the

questionnaire he stated, "I am against war and violence," "I want no part of war and death," "I hate war and death," and "it would be a moral sin to do anything for your war machine." There are no statements by Hanson in the Form 150 which would indicate that he was selective in his opposition to wars. We think these statements, taken together, essentially allege that Hanson is opposed to participation in war in any form.[2]

█ As to whether the form ·indicates that his personal beliefs are held with the strength of religious conviction in his life, rather than stemming solely *from political, sociological or philosophical* views, a similar analysis may be made. Hanson signed the form stating he was conscientiously opposed to war in any form "by reason of my religious training and belief." He also stated in the Form 150 that he was a member of the Bahai Faith and that his beliefs were derived from "my acquaintances and other surroundings." It is true that other statements are made which appear to represent his political, sociological or philosophical views; but as the Supreme Court stated in Welsh v. United States, *supra*, 398 U.S. at 341, 90 S.Ct. at 1797, when a registrant states that his objections to war are " 'religious,' that information is highly relevant to the question of the function his beliefs have in his life." *See* United States v. Seeger, 380 U.S. 163, 184, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The fact that the form discloses political, sociological and philosophical as well as religious views does not detract from the prima facie validity of the claim, when it is evident that his views stem at least in part from his religious training and belief. In this regard, the Supreme Court, in Welsh v. United States, *supra*, 398 U.S. at 342–

343, 90 S.Ct. at 1798, made this statement:

"We certainly do not think that § 6(j)'s exclusion of those persons with 'essentially political, sociological, or philosophical views or a merely personal moral code' should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy. The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest *at all* upon moral, ethical, or religious principle but instead rests *solely* upon considerations of policy, pragmatism, or expediency. In applying § 6(j)'s exclusion of those whose views are 'essentially political, sociological, or philosophical' or of those who have a 'merely personal moral code,' it should be remembered that these exclusions are definitional and do not therefore restrict the category of persons who are conscientious objectors by 'religious training and belief.' Once the Selective Service System has taken the first step and determined under the standards set out here and in *Seeger* that the registrant is a 'religious' conscientious objector, it follows that his views cannot be 'essentially political, sociological, or philosophical.' Nor can they be a 'merely personal moral code.' See United States v. Seeger, 380 U.S., at 186 [85 S.Ct. at 864]." (Emphasis supplied.)

█ The statements made by Hanson in his Form 150 cannot be said to be essentially political, sociological or philosophical, nor a merely personal code. On their face, they are based in major

---

2. *Compare* United States v. Stetter, *supra*, 445 F.2d at 474–475; United States v. Callison, 433 F.2d 1024, 1026 (9th Cir. 1970); United States v. Broyles, 423 F. 2d 1299, 1301–1302 (4th Cir. 1970); *with* Kurtz v. Laird, 449 F.2d 210, 212 (5th Cir. 1971); Bresette v. Knutson, 443 F.2d 179, 181–182 (7th Cir. 1971).

part on religious training and belief and were entitled to be treated as making a prima facie case for conscientious objector status by the local board. *See e. g.*, United States v. Levy, 419 F.2d 360 (8th Cir. 1969) ; United States v. Haughton, 413 F.2d 736 (9th Cir. 1969).

### Statement of Reasons

Hanson claims that since a prima facie case was made for conscientious objector status, the failure of the local board to state the reasons for its refusal to grant the classification (prior to appeal to the state appeal board) required the trial court to enter a judgment of acquittal notwithstanding the verdict.

This Court has recently made it clear that, in the absence of specific written findings, a court may find a basis in fact for a classification from the objective evidence within the four corners of the registrant's file.

"[I]t is settled law that a board finding turning on factors not apparent from an examination of the file will not survive judicial review in the absence of some specific written findings or notations to support it. . . . Since there are no such findings here, we can only sustain the denial of [the] conscientious objector claim if we find some basis in fact for the conclusion of insincerity in the objective evidence in his Selective Service file." United States v. Rutherford, 437 F.2d 182, 183–184 (8th Cir. 1971). *See* United States v. Iverson, *supra*, 455 F.2d at 82; United States v. Abbott, 425 F.2d 910, 913 n.4 (8th Cir. 1970).

Thus, this Circuit has not heretofore adopted the rule urged by Hanson, and set forth in United States v. Haughton, *supra*, 413 F.2d at 739, to the effect that once the registrant has made a prima facie case, it is a fatal procedural flaw for the local board to fail to articulate

in writing the reasons for its denial of a conscientious objector classification.

The rationale of *Haughton* is that written reasons are necessary to provide the registrant with a basis for meaningful appeal and review.

"Otherwise a court cannot determine whether a board's denial of a requested classification was based on a belief that the registrant's statements, even if true, did not entitle him to the classification, or on the reasonable disbelief of certain allegations necessary to the registrant's *prima facie* case." *Id.* at 739.

Since *Haughton*, at least two other circuits have adopted this rule. *E. g.*, Scott v. Commanding Officer, 431 F.2d 1132, 1137–1138 (3d Cir. 1970) ; United States v. Broyles, *supra*, 423 F.2d at 1304; *see also* Fein v. Selective Service System, 405 U.S. 365, 380, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972).

Although Hanson's counsel concedes that there is objective evidence within Hanson's file to justify a finding of insincerity, he urges that this Court adopt the rule in *Haughton* and its progeny. Except for a change in the position of the Government, subsequent to the submission of this case, we would feel compelled to affirm this conviction on the basis of the reasoning advanced in *Iverson, Rutherford*, and *Abbott*. However, apparently the Government now takes the position that the rule enunciated in *Haughton* is the correct rule, especially in view of the fact that the Selective Service regulations now require that the board articulate its reasons for denial of a conscientious objector classification.

The Government's changed position became apparent in the Solicitor General's brief in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972) (per curiam), where it was stated: "We are now persuaded that, in the particular circumstances of this case,

the failure of the local board to state reasons for denying petitioner conscientious objector status was error." Likewise, in his brief, the Solicitor General acknowledged the validity of *Haughton*. And it was on this basis that the Supreme Court vacated the judgment and remanded the case in *Joseph*.

While *Joseph* was still pending decision, this change in position by the Solicitor General was relied upon by Mr. Justice Blackmun in Fein v. Selective Service System, *supra*, 405 U.S. at 381, 92 S.Ct. at 1072.

"[T]he Government has now taken the position that '[a]lthough this judicial rule [of *Haughton* and its progeny] finds little support in early precedent . . . we do not think it appropriate to contend that it is erroneous.' The Government also notes that the requirement for an administrative statement of reasons 'seems fully consistent with the new statutory . . . and regulatory . . . provisions on this point.' . . .

"While *Joseph* also is a conviction case and is not one on pre-induction review, its obvious significance for Fein is that if the doctor is ever again called for induction, the rule of *Haughton* will provide a defense for him unless and until the requirements of the new statute and regulations are fulfilled."

Therefore, in view of the statements of the Supreme Court in *Fein* and its order vacating the judgment and remanding *Joseph*, and in view of the present position of the Government on this issue, as indicated by its supplemental brief in this case, the failure of the local board to specify its reasons for the denial of the conscientious objector classification must be held to be a fatal procedural error necessitating a judgment of acquittal.

Reversed and remanded with instructions to enter a judgment of acquittal.