**Michael R. TURPIN et al., Appellants,**

v.

**Stanley S. RESOR, as Secretary of the Army of the United States, et al., Appellees.**

**No. 71-1589.**

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1971.

Donald A. Jelinek (argued), William Samsel, Berkeley, Cal., for appellants.

Richard F. Locke, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for appellees.

Before HAMLEY, HAMLIN and KILKENNY, Circuit Judges.

HAMLEY, Circuit Judge:

Plaintiffs, including intervenors, brought this class action against defendant Government officials and military

officers, to have Army Regulation (AR) 635–20(6), as revised March 6, 1970, declared unconstitutional, and for injunctive relief. Revised AR 635–20(6) prevents Army personnel (with some exceptions not relevant here) from filing applications for discharge as conscientious objectors except at permanent duty stations. Because of this revised regulation plaintiffs were not permitted to file such applications at the Oakland, California Overseas Replacement Center, which was their temporary duty station while in process of being transferred to permanent duty stations in Vietnam. On motion of defendants, the action was dismissed. Some of the plaintiffs appeal.

Plaintiffs argue that the revision of AR 635–20(6) is unreasonable, arbitrary and capricious in that it bears no reasonable relation to the legislative policy of giving recognition to the conscientious objection of servicemen based upon experience after entry into military service. This revision, plaintiffs urge, impedes and discourages sincere conscientious objectors from gaining recognition of their beliefs and imposes a direct threat to these beliefs. According to plaintiffs, there is no necessity for prohibiting the filing of such applications at the Oakland Overseas Replacement Center because the administrative burden resulting from such filings has been, and would be, minimal. The revision of AR 635–20(6) therefore has no rational basis, plaintiffs contend, and it is accordingly violative of the Due Process Clause of the Fifth Amendment.

▮ There is no constitutional or statutory requirement that the armed forces provide a procedure for release of servicemen whose conscientious objections crystallized after they were inducted. Brown v. McNamara, 263 F.Supp. 686 (D.C.N.J.1967), aff'd 387 F.2d 150 (3d Cir. 1967). However, the Defense Department, viewing 50 U.S.C. App. § 456(j), a provision of the Selective Service Act of 1967, as stating a national policy not to subject bona fide conscientious objectors to combatant training and service in the armed forces, determined to establish uniform procedures in all branches of the armed services for considering discharge requests on the ground of conscientious objection (Department of Defense [DOD] Directive No. 1300.6). For the Army, these procedures are set forth in AR 635–20.

But DOD 1300.6 also makes it clear that the status of a person already serving in the military, who seeks a release as a conscientious objector, is different than that of a draft registrant who seeks exemption on that ground prior to induction. Thus DOD 1300.6(IV (B)) provides that:

> ". . . Consistent with [the] national policy, bona fide conscientious objection as set forth in this Directive by persons who are members of the Armed Forces will be recognized to the extent *practicable and equitable*. . . ." (Emphasis supplied.)

There is no such limitation as to practicability or equity in the Selective Service Act with regard to registrants who seek exemption as conscientious objectors prior to induction. This difference in status is consistent with the generally recognized principle that the rights of men in the Armed Forces ". . . must perforce be conditioned to meet certain overriding demands of discipline and duty." Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). *See also*, Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L. Ed. 842 (1953); In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

▮ Considered in this context, the regulation in question is not subject to challenge on the theory of administrative due process. We are dealing with a voluntary program initiated by the armed forces. The manner it chooses to implement that program lies within the discretion of the civilian and military heads of the Army. Of course the implementing regulations must be prescribed in a manner authorized by governing directives, and they must not

work an invidious discrimination between races, religions, and the like. And servicemen must have a forum in which they can assert that the regulation is not applicable to them, or was misapplied. But insofar as the wisdom or rationality of the regulation is concerned, the courts have nothing to say.

Our view as to the limited functioning of the courts concerning due process attacks upon this regulation, finds its parallel in the attitude the Supreme Court adopted in Orloff v. Willoughby, 345 U. S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). In declining judicial review of a physician's duty assignment in the Army the Supreme Court there said:

> "We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service." 345 U.S. at 93–94, 73 S.Ct. at 540.

The inapplicability of the Due Process Clause to military regulations of this kind is also indicated by the holding of this court in Kimball v. Commandant Twelfth Naval Dist., 423 F.2d 88, 90 (9th Cir. 1970). We there held that the requirement that a serviceman go to Vietnam while his conscientious objector application is being determined is not subject to challenge on the ground of administrative due process. If, as plaintiffs urge, the revision of AR 635–20(6) is indicative of Army resistance to in-service conscientious objector releases, the remedy, if any, must come from Congress which, up to now, has left this area to the military.

Plaintiffs assert that the revision of AR 635–20(6) also deprives them of equal protection of the law, a concept imbedded in the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). But the argument in support of this view turns out to be, for the most part, an attack upon the rationality of the revision, in distinguishing between servicemen permanently assigned to the Oakland Overseas Replacement Center, and servicemen having their temporary duty station there while being processed for transfer to Vietnam. This is essentially a due process attack upon the regulation and is therefore not amenable to judicial examination.[1]

---

1. Insofar as the difference in treatment of classes of servicemen effectuated by revised AR 635–20(6) is thought to establish impermissible discrimination, we agree with Judge Wollenberg's ruling, quoted below, in the unreported decision in Wright v. Laird, Northern District of California, No. C–70 1133 ACW, August 5, 1970. Rejecting a similar contention, Judge Wollenberg said:

    > "Nor is this the kind of 'invidious discrimination' which would justify invocation of the equal protection clause. It is the number of conscientious objector applicants, not of other applicants, which has so greatly increased. It is the conscientious objector case which requires peculiarly subjective judgments and time consuming procedures; other sorts of discharge are more susceptible to objective determination, and are only seldom brought before the federal courts. Finally, as noted by the government, discharge of conscientious objectors is not for the convenience of the service in the same way as is discharge for example, of the physically unfit."

Plaintiffs also contend that the revision of AR 635–20 and the Army's action in this case deprived plaintiffs of their constitutional right to the effective assistance of counsel. The effect of the revised regulation, plaintiffs assert, is to deprive them of civilian counsel of their choice, and "most probably" to force them to accept military counsel in Vietnam to process their conscientious objector applications. If their applications are turned down by the Army, plaintiffs point out, they must then retain counsel in Washington, D.C. for the purpose of judicial review, with enhanced difficulty of communication between attorney and client.

There are, initially, certain factual considerations which weaken plaintiffs' argument that they are denied effective assistance of counsel. First, the procedures outlined in AR 635–20 may be fully utilized by a serviceman without the assistance of retained counsel, since forms and in-service counseling are provided. Second, under (4)(b)(3) of the regulation, an applicant may have retained counsel with him, if he desires, when he appears before a hearing officer. Third, plaintiffs do not assert that counsel is wholly unavailable in Vietnam, but only that applicants would "most probably" be forced to accept military counsel in that country.

We do not rest, however, upon these practical factors. In view of the fact that the administrative processing of in-service conscientious objector applications is neither criminal nor judicial in nature, we do not believe that any right to counsel guaranteed by the Constitution is involved. In the Selective Service System, registrants are not entitled to representation by counsel in conscientious objector proceedings before local and appeal boards, and this court has held that the refusal to permit counsel at such proceedings presents no constitutional problem. United States v. Evans, 425 F.2d 302, 304 (9th Cir. 1970); Haven v. United States, 403 F.2d 384, 385 (9th Cir. 1968).

We hold, on similar reasoning, that no constitutional issue is presented by any curtailment of effective assistance of counsel which may be thought to result from application of the Army regulation here in question.

In view of what is said above it follows that the district court did not err in refusing to compel defendants to answer plaintiffs' interrogatories designed to determine whether there is a rational basis for the revised form of AR 635–20(6). Nor do we agree with plaintiffs that the recent decision of the Supreme Court in Ehlert v. United States, 402 U. S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971) demonstrates the need to question in detail the Army's practice in processing applications for release of servicemen, generally, as conscientious objectors. Insofar as *Ehlert* makes reference to military procedures it is primarily directed to the question of whether Selective Service System registrants whose conscientious objections crystallize after issuance of an induction order, but before induction, are afforded an opportunity to apply for release from the military service on that ground. No such problem is presented here.

Affirmed.