Pvt. Gregory M. KEMP, by Francis L. Ruppert, His Next Friend, Petitioner,

v.

Major General BRADLEY, Commanding Officer, Fort Leonard Wood, Missouri, Respondent.

Civ. A. No. 2741.

United States District Court,
W. D. Missouri, S. D.

Sept. 9, 1971.

Francis L. Ruppert, Clayton, Mo., for petitioner.

Vernon A. Poschel, Asst. U. S. Dist. Atty., Kansas City, Mo., for respondent.

ORDER DENYING PETITION FOR HABEAS CORPUS AND DISSOLVING RESTRAINING ORDER

COLLINSON, District Judge.

Kemp, presently on active duty with the United States Army, stationed at Fort Leonard Wood, Missouri, has filed a petition for habeas corpus, seeking to be discharged from the custody of the armed services. The parties have stipulated the facts and have agreed to the genuineness of the Army records concerning Kemp's application for separation on the basis of conscientious objection and denial thereof, designated Respondent's Exhibit No. 1. The petition will there-

fore be decided on the basis of the pleadings and records before us, without the necessity of an evidentiary hearing.

On March 22, 1971, Kemp filed his request for separation in accordance with Department of Defense Directive 1300.6 and Army Regulation (AR) 635–20. This application was reviewed by the Class I–O Conscientious Objector Review Board, Department of the Army, and disapproved on April 26, 1971. Kemp was informed of the action by the Review Board on May 4, 1971.

Our scope of review in this matter is whether or not there was a basis in fact for the denial of the request for separation.

In his application, Kemp expresses a moral and ethical abhorrence to war, which developed through religious instruction in the Roman Catholic Church, family life, college life, readings and other experiences. Kemp states, in part:

> My conscientious objection to war in any form stems from a combination of religious training as a Roman Catholic, the ideals of humanism, and experiences and readings both in and out of the service. My claim is based on the belief that taking a human life, killing, cannot be condoned. Life is at the top of my priorities, and everything else is subordinate. . . .

> I cannot let mystelf be a part of a machine that kills. The very nature of the military is the preservation of the freedom, honor, and integrity of a nation at the expense of human life if this should prove necessary. In time of war, it has been determined that this is necessary. Life, therefore, becomes subordinated to freedom, honor, and country—an absurd arrangement of priorities in my mind. This arrangement cannot be accepted and therefore war, however "good" the intentions, simply cannot be accepted.

And further, Kemp states:

> The first thing that I encountered in the Army that really upset me was the "Spirit of the bayonet." Anyone with any sensitivity at all would have to object to standing in a field with a rifle and bayonet in his hands and yelling "kill" for five minutes at a time . . . I participated as little as possible in the bayonet drills and when I had to participate, I wouldn't use the bayonet.

Kemp also refused to participate in further training and was willing to accept a Court Martial "rather than voluntarily comply with orders to serve" in Vietnam. Kemp avers:

> I had been lax in my obligation to myself by not seriously examining my role in the Army sooner, but with a clerical MOS and the very minimal military duties required, it is easy to be lax. I knew that with my MOS and with my very restrictive profile, that I would be put into a non-combat role while in Viet Nam. But even this was no longer in agreement with my beliefs, for in my short but intensive period of examination, I had realized that simple fact: there can be no combat forces without combat support forces. . . . By continuing to contribute to and participate in the military, I am a vicarious killer. I cannot tolerate this—it violates everything that my life experiences and religious training have taught me to believe. I cannot in conscience give any service to the military for by doing so I am killing.

Kemp included six letters of reference from his family and friends with his application. The letters attested to Kemp's sincerity and high moral character.

In accordance with AR 635–20, Kemp was interviewed by numerous officers. LTC William D. Froeschner, Chaplain, stated:

> It appears that PVT Kemp has struggled with this problem since college and that it culminated in his present decision during Advanced Individual Training. Most of his beliefs are philosophically based but there is a strong religious ethical conviction at

this time. Both in his written statements and his verbal expression, Private Kemp appears to be sincere.

CPT Gary L. Martin stated:

Although PVT Kemp did not apply for conscientious objector status until he received his orders for overseas, I believe he is sincere in his beliefs. Based upon the information in PVT Kemp's application and upon my interview with him, I recommend approval of his application.

Col. Charles M. East, Jr., Brigade Commander, recommended disapproval of Kemp's request, for the reasons that:

a.  His application . . . was not submitted until after he had been alerted for duty in Vietnam. (D)uring my interview with him he stated, "Had I been alerted for duty in Europe or for permanent assignment with this brigade, I probably would not at this time have determined in my mind that I am a conscientious objector, although I probably would have done so at some time in the future."

b.  Private Kemp's request for discharge as a conscientious objector is not his first attempt to gain discharge from military service. He has stated to a psychiatrist that he wants out of the Army no matter how he accomplishes it (Inclosure 7). He has corresponded with United States Senator Javits (Inclosure 8) asking for assistance in obtaining a 212 discharge. In spite of very high GCT and clerical aptitude test scores, he has attempted to delay his completion of advanced individual training to such an extent that he required nine weeks to complete a training period of normally four weeks. . . .

Further, Col. East stated that because of the foregoing reasons, "I question whether the deeply held moral, ethical, or religious beliefs necessary for conscientious objector discharge are truly present in this case. Instead, I believe that this is merely the vehicle used for another attempt to gain discharge from military service."

LTC Billy J. McAfee, Battalion Commander, recommended disapproval, stating that "this is his third attempt to get out of the Army and has tried every conceivable angle to avoid service to his country."

CPT Richard A. Bruce, Company Commander, recommended disapproval, stating:

This man has, in my estimation, shown a lack of sincerity involving this application which makes me doubt its legitimacy. He decided to apply for Conscientious Objector after it was decided that we would not process a 212 discharge for unsuitability. He instituted a Congressional over this matter. I feel this man would use any means available to him in order to be discharged from the United States Army.

CW4 Jack E. Wilson, Assistant Adjutant General, recommended disapproval, stating: "Although this man's beliefs are well stated, this request appears to be based more on expediency than deeply held ethical convictions."

The Review Board disapproved Kemp's request on April 26, 1971, finding that the "Applicant lacks the depth of conviction required to qualify for discharge as a conscientious objector." The Review Board further found that:

He does not clearly establish that his conscience, spurred by deeply held moral, ethical, or religious beliefs, would give him no rest or peace if he allowed himself to remain a part of an instrument of war.

The Review Board based its findings on the following factors:

The timing of PVT Kemp's application casts serious doubt on the depth and sincerity of his professional beliefs. He applied for conscientious objector status only after notice of orders of reassignment to . . . Vietnam. . . . PVT Kemp entered the Army on 28 August 1970. He learned

of his orders to Vietnam on 8 February 1971, and applied for discharge as a conscientious objector on 22 March 1971. From the time of his entry . . . until he placed his application for discharge, applicant participated in Army training, saw what the Army was like, and clearly learned what the Army stood for and would expect of him. Yet this experience did not stir in PVT Kemp any deeply felt conscientious objection to his service in the Army. It was not until he learned . . . of his orders to Vietnam that he states that his conscience began to bother him. To the Board this indicates that PVT Kemp's application is not based upon deep religious, moral or ethical beliefs but is more an attempt to avoid service in Vietnam.

Further, the Board found:

Apparently conscientious objection did not even enter applicant's mind until he received notice of his orders to Vietnam since on 5 February 1971, he was actively pursuing his discharge . . . under the provisions of AR 635–212 through a letter to Senator Jacob Javits . . . to intercede. . . . No mention of conscientious objection is made. . . . (A)pplicant's battalion commander and brigade commander both . . . indicate that they felt the application was merely an expedient means being used by PVT Kemp to avoid military duty.

The Board further found that Kemp's attempt to procure a discharge under AR 635–212 (on grounds of unsuitability) just prior to his application for conscientious objector status "indicates that PVT Kemp is attempting whatever methods he can find to secure his discharge from the Army." The Board stated "PVT Kemp's actions are consistent with the desire, as stated to interviewing psychiatrist on 21 January 1971, to get out of the Army in whichever way possible." The Board concluded:

These multiple attempts at receiving a discharge from the Army upon whatever grounds appear to be most likely to succeed carry great weight in showing the Board that applicant does not possess nearly the depth of conviction necessary to qualify for discharge as a conscientious objector.

■■ It is well settled that an applicant for discharge on the basis of conscientious objection has the burden of establishing a prima facie entitlement to such discharge, but once he has done so, the burden is on the Army to show something in the record supporting its denial. See United States v. St. Clair, (E.D.N.Y.) 293 F.Supp. 337, 344; Rautenstrauch v. Laird, (W.D.Tex.) 3 SSLR 3213. Kemp's application established a prima facie entitlement to separation as a conscientious objector. See Packard v. Rollins, (W.D.Mo.) 307 F.Supp. 1388, aff'd (C.A. 8) 422 F.2d 525; United States v. Abbott, (C.A. 8) 425 F.2d 910. We must examine the facts before the Board to determine whether they cast doubt on the sincerity of the claim.

■ Sincerity is the touchstone of conscientious objection. See Witmer v. United States, 348 U.S. 375, 381, 75 S. Ct. 392, 99 L.Ed. 428. Although no specific finding of "insincerity" was made by the Review Board, such a finding is implied by the statement that Kemp lacked the "depth of conviction" necessary. Petitioner contends that a "depth of conviction" standard serves no meaningful criteria, citing Helwick v. Laird, (C.A. 5) 438 F.2d 959. Therein, the Court stated that "depth of conviction" is "verbalism without any real meaning in this factual context." However, that case also indicated that a possible exception exists for conscientious objection described in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308, which is not based upon traditional religious beliefs. *Welsh* established the test for claims based on non-religious grounds. See Hackett v. Laird, (W.D. Tex.) 326 F.Supp. 1075.

In his statement, Kemp asserts that his beliefs are based upon "religious training as a Roman Catholic, the ideals of humanism, and experiences and read-

ings." His statement emphasizes the humanistic basis of his beliefs as opposed to traditional religious beliefs. Therefore, the *Welsh* test which includes a "depth of conviction" standard is applicable here.

In *Welsh*, the Court held that a registrant's conscientious objection to all war falls within the meaning of § 6(j) of the Military Selective Service Act if the opposition stems from the registrant's beliefs about what is right and what is wrong and these beliefs are held with the strength of traditional religious convictions. The Court further held:

> The two groups of registrants that obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency.

The principles of *Welsh* are of course applicable to in-service conscientious objector applicants.

■ The Review Board's basis for denial of Kemp's claim was the lateness of the claim—arising after receipt of orders to Vietnam; the prior attempts by Kemp to procure a discharge from service under other Army regulations; the recommendations of disapproval by his commanding officers; and his statement to the interviewing psychiatrist that he desired to get out of the Army in any way possible. Standing alone, none of these factors would provide a basis-in-fact for the denial of Kemp's application. However, viewed as a whole, the objective facts fall within the exclusions of *Welsh*.

We hold that there was an adequate basis in fact for the denial. For that reason, we will not disturb the determination of the Administrative Board. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, *supra*.

It is therefore

Ordered that the petition for habeas corpus be denied; and

Ordered that the restraining order be dissolved.