Gregory M. KEMP, Appellant,

v.

Major General BRADLEY, Commanding Officer, and Stanley R. Resor, Secretary of the Army, Appellees.

No. 71–1649.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 18, 1972.

Decided April 4, 1972.

Francis L. Ruppert, Clayton, Mo., for appellant.

Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., for appellees.

Before BREITENSTEIN,* BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Appellant, Gregory M. Kemp, a private in the United States Army, petitioned the district court for a writ of habeas corpus after the Army denied his request for discharge as a conscientious objector pursuant to AR 635–20. Upon finding a basis-in-fact for the Army's refusal to discharge appellant, the district court denied habeas corpus relief. Kemp appealed. We reverse and remand the case with directions.

Appellant was inducted into the United States Army on August 28, 1970. He was transferred to Fort Leonard Wood, Missouri, on November 15, 1971, for advanced individual training as a clerk-typist. Appellant's application for discharge due to physical unsuitability was denied in January 1971. On February 8, 1971, Kemp was advised that he had been ordered for duty in the Republic of Vietnam. Thereafter Kemp filed his request for separation as a conscientious objector in accordance with Department

* Of the Tenth Circuit, sitting by designation.

of Defense Directive 1300.6 and Army Regulation 635–20. On April 26, 1971, appellant's request for separation was reviewed and disapproved by the Class I–O Conscientious Objector Review Board of the United States Army (Board).

In passing upon appellant's application for discharge, the Board determined that:

[Kemp] lacks the depth of conviction required to qualify for discharge as a conscientious objector. He does not clearly establish that his conscience, spurred by deeply held moral, ethical, or religious beliefs, would give him no rest or peace if he allowed himself to remain a part of an instrument of war.

The Board added in conclusion:

* * * [M]ultiple attempts [by Kemp] at receiving a discharge from the Army upon whatever grounds appear to be most likely to succeed carry great weight in showing the Board that applicant does not possess nearly the depth of conviction necessary to qualify for discharge as a conscientious objector.

■ In reviewing the adequacy of this conclusion, we are mindful that the Board is bound by, and must be held to, the reasons asserted for denial. *See* United States v. Abbott, 425 F.2d 910, 913 n. 4 (8th Cir. 1970). We, therefore, examine the appropriate precedents to determine whether this "depth of conviction" test utilized by the Board was the proper standard for passing on an application for discharge as a conscientious objector.

■ The Supreme Court in Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), succinctly reiterated the applicable tests:

In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, [91 S.Ct. 828, 28 L.Ed.2d 168.] He

must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163, [85 S.Ct. 850, 13 L.Ed.2d 733;] Welsh v. United States, 398 U.S. 333, [90 S.Ct. 1792, 26 L.Ed.2d 308.] And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375, [75 S.Ct. 392, 99 L.Ed. 428.] [403 U.S. at 700, 91 S.Ct. at 2078]

This explication applies to civilian, as well as Army, classification of conscientious objectors. Armstrong v. Laird, 456 F.2d 521 (1st Cir., 1972); *see* Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 1322–1323, 28 L.Ed.2d 625 (1971); Universal Military Training and Service Act § 6(j) [50 U.S.C. App. § 456(j) (Supp. III 1967)]; Department of Defense Directive 3100.6 (1968); Army Regulation 635–20.

The expression, "depth of conviction," which the Board used in relation to Kemp's conscientious objector beliefs appears to have originated in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), where Mr. Justice Black compared Welsh's beliefs with beliefs that had been asserted by a registrant in the earlier case of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Mr. Justice Black, in discussing claims which were grounded on moral or ethical considerations rather than on traditional religious dogma, said:

* * * Seeger and Welsh affirmed on those applications that they held deep conscientious scruples against taking part in wars where people were killed. Both strongly believed that killing in war was wrong, unethical, and immoral, and their consciences forbade them to take part in such an evil practice. Their objection to participating in war in any form could not be said to come from a "still, small voice of conscience"; rather, for them that voice was so

loud and insistent that both men preferred to go to jail rather than serve in the Armed Forces. There was never any question about the sincerity and *depth of Seeger's convictions as a conscientious objector,* and the same is true of Welsh. 398 U.S. at 337, 90 S. Ct. at 1795. (emphasis added)

In the context of the *Welsh* opinion, the "depth of conviction" phrase represented a description of the quality of the nontraditional religious beliefs held by Welsh as well as Seeger, not a test for conscientious objection for either registrant. Significantly, Mr. Justice Black later explained:

> In resolving the question whether Seeger and the other registrants in that case qualified for the exemption, the Court stated that "[the] task is to decide whether the beliefs professed by a registrant are *sincerely* held * * *." (398 U.S. at 339, 90 S.Ct. at 1796) (emphasis added)

It is well established that " * * * the ultimate question in conscientious objector cases is the *sincerity* of the [claimant] in objecting, on religious grounds, to participation in war in any form." Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955) (emphasis added); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Stetter, 445 F.2d 472, 479 (5th Cir. 1971); United States v. Rutherford, 437 F.2d 182, 186-87 (8th Cir. 1971); *see* United States v. Levy, 419 F.2d 360, 365 (8th Cir. 1969).

In the case of Helwick v. Laird, 438 F.2d 959 (5th Cir. 1971), the Fifth Circuit dealt with phraseology similar to that here in question. There the court characterized "depth and maturity" of views as "a verbalism without any real meaning * * *." *Id.* at 964. In rejecting this "depth and maturity" test used by the Board for evaluating conscientious beliefs, the court noted that "[o]ne does not have to be a St. Augustine or a Thomas Acquinas to qualify as a conscientious objector under AR 635-20," *Helwick, supra,* 438 F.2d

at 964. We agree. In United States v. Hesse, 417 F.2d 141 (8th Cir. 1969), Judge Lay stated: "To hold sincere religious conviction, one does not have to be a theologian," 417 F.2d at 146. Likewise, in Caverly v. United States, 429 F.2d 92 (8th Cir. 1970), we said that "[t]he extent of religious training need not measure the depth of religious conviction." *Id.* at 94. Even beliefs which may seem shallow in a theological context, if sincerely held, can qualify a registrant as a conscientious objector. *Caverly, supra,* 429 F.2d at 94.

Accordingly, we cannot agree with the government's position in this case that the phrase "depth of conviction" should be considered equivalent to the term "sincerity," and that no substantial difference exists between the two expressions. Sincerity, we think, represents a concept easily understood and easily applied by laymen on draft boards and the Army Review Board. "Depth of conviction" requires theological or philosophical evaluation. We think it unwise to adopt this more complex concept as the requirement which a Selective Service registrant or member of the Armed Forces must fulfill in order to qualify for conscientious objector classification.

The district court, however, in its denial of Kemp's petition, stated:

> Although no specific finding of "insincerity" was made by the Review Board, such a finding is implied by the statement that Kemp lacked the "depth of conviction" necessary. [Record at 85]

We cannot accept this *implied* finding. If the Board had rejected Kemp's application on grounds of insincerity rather than on an evaluation of the quality of his convictions, it might easily have said so. The hearing officer and the post chaplain, who interviewed Kemp in compliance with Army regulations, reported that they considered Kemp "sincere" in his beliefs. Although Kemp's commanding officer, battalion commander, and brigade commander expressed opinions denigrating Kemp's sincerity, the Board,

although referring to these opinions, did not rest its denial of Kemp's application upon any affirmance of these views or rejection of the views of the chaplain and the hearing officer. Rather, the Board said that the favorable comments of the chaplain and the hearing officer, and those contained in letters supporting Kemp's application, were "outweighed" by other factors and conclusions.[1] These other factors, according to the Board, added up to a lack of depth of conviction. The Adjutant General of the Army, in taking final action on the application on behalf of the Secretary of the Army, stated only that Kemp lacks the "depth of conviction to qualify * * * as a conscientious objector." Accordingly, we must interpret the action of the Board and the Adjutant General as ruling that a lack of depth of conviction rather than insincerity served as the basis for rejecting Kemp's application. We find no reason to believe that the Board meant sincerity when it used the term "depth of conviction."

The district court found, and the government does not here dispute, that "Kemp's application established a prima facie entitlement to separation [from the Service] as a conscientious objector." The opinion of the Board failed to show a lawful reason for refusing to classify Kemp as a conscientious objector and release him from military service pursuant to Army Regulations. This prima facie case remained unrebutted following the action of the Board.

■ We believe the appropriate remedy here is the issuance of the writ, unless the Army should forthwith act to discharge the appellant under appropriate regulations. Armstrong v. Laird, 456 F.2d 521 (1st Cir. 1972). We distinguish this case from others in which servicemen had sought discharges as conscientious objectors but where the federal courts limited relief by directing that the military administratively recon-

sider its action, e. g., Hammond v. Lenfest, 398 F.2d 705, 718 (2d Cir. 1968); United States ex rel. Mankiewicz v. Ray, 399 F.2d 900, 902 (2d Cir. 1968). In those cases, the military had altered its standards for processing conscientious objector claims while the petitions for habeas corpus relief were pending before the courts. Under principles of comity, the Second Circuit in Lenfest, after first recognizing that the writ might issue as an appropriate remedy, 398 F.2d at 717, directed on rehearing that the case be sent back to the Department of the Navy for reprocessing, thus showing proper regard for the relationship of the Armed Services and the Federal courts. Id. at 718. Since no change of standard is involved in the instant case, but rather, the Army's misapplication of existing standards, we do not restrict our relief as the Second Circuit did in Lenfest and Ray.

We reverse and remand this cause and direct that the district court grant the writ. The district court may stay its hand for no more than ten days to afford the Army the opportunity to discharge Kemp pursuant to Army regulations.

STEPHENSON, Circuit Judge (dissenting).

I cannot join the court's opinion. The Conscientious Objector Review Board denied Kemp's application on the grounds (1) that it was not truly based upon deeply held religious, moral or ethical beliefs, and (2) that Kemp lacked the "depth of conviction" required to qualify for separation as a conscientious objector. As Judge Collinson's soundly reasoned opinion makes clear, 340 F. Supp. 285 (W.D.Mo.1971), there is ample evidentiary support for the Board's action.

The majority, in refusing to equate the Board's depth of conviction language with the more refined and precise find-

---

1. The Board referred to the timing of the application which followed the issuance of orders for Kemp's assignment to Viet- nam, and the prior efforts of the applicant to obtain a discharge on other grounds.

ing that Kemp's beliefs were not sincerely held, exalts semantics at the expense of meaningful substance. While I can agree that one need not be a theologian in order to hold sincere religious conviction, I also firmly believe that one need not possess the linguistic skills of an experienced jurist to ably discharge his duties as a member of an Army Review Board. Unfortunately, in upsetting such firmly grounded determinations as the one in the instant case, the majority requires just that on the part of those who voted to deny Kemp's application.

I would affirm on the basis of Judge Collinson's opinion.