**580**

Horace Laird **BALDWIN**

v.

**COMMANDING OFFICER PHILADEL-
PHIA NAVAL BASE et al.**

Civ. A. No. 73–1032.

United States District Court,
E. D. Pennsylvania.

Nov. 19, 1973.

See also, D.C., 365 F.Supp. 574.

 

· G. Sander Davis, Philadelphia, Pa., for plaintiff.

Frank J. Bove, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Petitioner, Horace Laird Baldwin, brings this habeas corpus action pursuant to 28 U.S.C. § 2241 (1970) seeking release from the custody of the defendant United States Naval authorities. The basis for petitioner's claim is that the defendants wrongfully rejected petitioner's application for discharge as a conscientious objector.

Baldwin enlisted in the U. S. Navy for a four (4) year period commencing in October 1966. This period was interrupted when petitioner absented himself from the Navy without authority on May 17, 1969. He returned voluntarily to the Philadelphia Naval Base on May 8, 1973. On August 8, 1973, petitioner was tried by general court-martial for violating Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, and on that date was convicted and sentenced to be reduced in rank to E–1 and a forfeiture of pay. Petitioner was not sentenced to any confinement nor adjudged any punitive discharge. Currently petitioner is serving as a hospital corpsman assigned to the Philadelphia Naval Base.

On November 1, 1968, petitioner applied for a discharge as a conscientious objector under Bureau of Naval Personnel Manual (BUPERSMAN) 1860120. The application for discharge contains petitioner's statement discussing the basis and nature of conscientious objection, an amendment to the application setting forth more explicitly petitioner's objection to participation in all wars, letters from five persons in support of the application attesting to petitioner's sincerity and the nature of petitioner's beliefs, a psychiatrist's report, a Chaplain's report, the Commanding Officer's recommendation of disapproval of the application and the company commander's recommendation of approval of the application.

The application for discharge provides the following description of the nature of petitioner's belief:

> I worship the ideals of Peace, Truth, and Love as Supreme. If I feel that a situation or action is putting me in conflict with my interpretation of these ideals . . . I believe my first duty is to try to resolve the internal one. I am deeply religious about this struggle for integrity.

Petitioner further explained that he "grew up with feelings of pacifism derived from the Quaker Sunday School I attended." He joined another peace loving church, the Unitarian Universalist Association, at the age of 16 following the example of his parents. The amended application states:

> I have become more sure of my objection to war in general since I filed my [original] request [for conscientious objector status] as I explain my views to my fellow servicemen who often want to know why I have not gone to Viet Nam. I was never taught to use the word "sinful", but it is basically what I mean when I speak of immorality.

The letters submitted in support of the application for discharge relate each writer's conviction that the petitioner's conscientious objector beliefs are sincere. The Chaplain's report also attests to petitioner's sincerity in "strongly believ[ing] our involvement in Vietnam is aggression [and that] he is still thinking through his thoughts on war in general." The company commanding officer's report states: "Forwarded recommending approval . . . HM3 Baldwin has been extremely intense and sincere." But the commanding officer for

the 8th Marines recommended disapproval stating:

"It is either stated or implied in enclosures (1), (6) and (7) [in petitioner's application] that HM3 BALDWIN is submitting his request because he believes that our involvement in Vietnam is agressive, and not that he holds a pacifist attitude ·toward what he calls a 'defensive' war. In paragraph B.(2) of his own statement, he states he cannot hold a position in any armed force that is pursuing a policy of agression."

Petitioner filed, on February 5, 1969, an amendment to his original application in which he clarified his opposition to all war.

On the basis of these documents the Chief of Navy Personnel, on March 20, 1969, denied petitioner's application for discharge. The denial letter stated:

Advise HM3 BALDWIN that his request for discharge by reason of conscientious objection was reviewed in the Bureau of Naval Personnel by an established Board which recommended that he not be discharged by reason of conscientious objection. It is considered that his desire to terminate his military service is not based on religious principles. The recommendation of the Board is approved. Accordingly, the Chief of Naval Personnel regrets that HM3 BALDWIN's request is not approved.

No elaboration of the reason for denial was given.

Petitioner absented himself from the Navy without authority soon before he was to report to McGuire Air Force Base for transfer to Vietnam. Petitioner absented himself because he feared that he would be compelled to comply with the orders of transfer to the Republic of Vietnam and the conflict this would cause with his conscientious objector beliefs.

A claim for discharge as a conscientious objector is established when the petitioner demonstrates (1) sincere

opposition (2) to participation in war in any form (3) based on religious grounds. Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); United States v. Shomack, 462 F.2d 338 (3 Cir. 1972); Scott v. Commanding Officer, 431 F.2d 1132 (3 Cir. 1972); United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970). As the Supreme Court stated in Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070 (1971):

In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, 91 S. Ct. 828, 28 L.Ed.2d 168. He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733; Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428. In applying these tests, the Selective Service System must be concerned with the registrant as an individual, not with its own interpretation of the dogma of the religious sect, if any, to which he may belong. United States v. Seeger, supra; Gillette v. United States, supra; Williams v. United States, 5 Cir., 216 F.2d 350, 352.

These requirements apply equally to both civilian and military applications for conscientious objector status. Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L. Ed.2d 625 (1971); Kemp v. Bradley, 457 F.2d 627 (8 Cir. 1972); Armstrong v. Laird, 456 F.2d 521 (1 Cir. 1972).

The Supreme Court has explicated the grounds upon which a claim for conscientious objector status is considered re-

ligiously based. In Welsh v. United States, 398 U.S. 333, 339, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970) the Court states:

> [T]he central consideration in determining whether the registrant's beliefs are religious is whether these beliefs play the role of a religion and function as a religion in the registrant's life. The Court's principal statement [in Seeger] of its test for determining whether a conscientious objector's beliefs are religious within the meaning of § 6(j) [of the Universal Military Training and Service Act] was as follows:

> > "The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition." 380 U.S., at 176, 85 S.Ct., at 859.

The Court made it clear that these sincere and meaningful beliefs that prompt the registrant's objection to all wars need not be confined in either source or content to traditional or parochial concepts of religion. It held that § 6(j) "does not distinguish between externally and internally derived beliefs," id., [380 U.S.] at 186, 85 S.Ct. at 864 and also held that "intensely personal" convictions which some might find "incomprehensible" or "incorrect" come within the meaning of "religious belief" in the Act. Id., at 184–185, 85 S.Ct., at 863–864. What is necessary under Seeger for a registrant's conscientious objection to all war to be "religious" within the meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions.

■ The scope of review available in deciding the lawfulness of a denial by the military of a claim for conscientious objector status is the "basis in fact" test set out in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Finally, in order to provide for meaningful review of actions involving the denial of *prima facie* claims for conscientious objector status courts have formulated the following rules: (1) When it is clear that a *prima facie* case is established, it is essential that the board state its basis for decision and the reasons therefor, *i. e.* whether it has found the registrant incredible, or insincere, or of bad faith and why. Scott v. Commanding Officer, 431 F.2d 1132, 1137 (3 Cir. 1970); United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970) (*en banc*). See also, Fein v. Selective Service System Local Board No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972); United States v. Crownfield, 439 F.2d 839 (3 Cir. 1971); (2) The Board is bound by, and must be held to, the reasons asserted for denial. Kemp v. Bradley, 457 F.2d 627 (8 Cir. 1972); United States v. Abbot, 425 F.2d 910 (8 Cir. 1970).

■ Petitioner's application for discharge established a *prima facie* case for conscientious objector status. There was nothing in the documents submitted by petitioner in support of the application for discharge casting doubt on the sincerity of petitioner's views. The application as amended demonstrates petitioner opposition to participation in war in any form. And the application sets forth the petitioner's beliefs which are of a moral, ethical or religious nature about why participation in war is unacceptable to his ethical code. Petitioner pointed out that his beliefs are derived from early Quaker Sunday School education and later association with the peace loving Unitarian Universalist Association. It was a conflict between the ideals of Peace, Truth and Love and his military participation which resulted in a final and resolute determination that petitioner "had to honestly state my objection to my present non-combatant position and stand firmly by my beliefs."

■ The defendants have failed to set forth an explanation for denial of petitioner's claims. On this basis alone we are compelled to find that the denial of petitioner's claim was without a basis in fact. See United States v. Shomock, 462 F.2d 338 (3 Cir. 1972); Kemp v. Bradley, *supra.*; Scott v. Commanding Officer, *supra.* Even so, a review of the record establishes no basis in fact for the Naval Personnel's finding that petitioner's claim was not religious.

As noted by the court in United States v. Abbot, 425 F.2d 910, 916 (8 Cir. 1970), "the Supreme Court ['s decision] in *Seeger* requires that one's pacificist belief be 'totally devoid' of religious grounds before exemption as a conscientious objector may be denied." See also United States v. Levy, 419 F.2d 360 (8 Cir. 1969). And, as the Court stated in Seeger v. United States, *supra,* the characterization of the registrant's beliefs as religious should carry great weight. See also Welsh v. United States, *supra* 398 U.S. at 341, 90 S.Ct. 1792. The petitioner stated that the struggle for integrity forming the basis for his ethical beliefs was an intensely religious struggle. Furthermore, the record reflects a continuous conflict of conscience by the petitioner concerning participation in military duty. The petitioner submitted a claim for conscientious objector status prior to enlistment in the Navy. He withdrew the claim because of a need to "take a stand". Letters in support of petitioner's claim attest to the serious struggle of conscience petitioner was caused by service in the military. He saw the minister at his Unitarian Church frequently in an effort to find a solution to this conflict. Finally, he became firm that the conflict of conscience was not subject to resolution and that he must leave the military.

■ The Government contends that there exists a basis in fact for denying petitioner's application because the application did not explicitly state petitioner's objection to war in terms of a moral "right and wrong" and that petitioner expressed the notion that society had a moral right to defend itself against aggression. Apparently the Government combines this lack of assertion of an explicit moral right and wrong stance with the assertion of society's moral right to defend itself in order to illustrate that petitioner's beliefs were not based in ethics or morals and thus not religious. We fail to see, however, how these observations by the Government have any value in determining whether petitioner's objection to war was religious. It is clear from petitioner's application that his beliefs sprang from an inner struggle which he felt, because of his beliefs in peace, love and truth, he could only resolve by leaving the military. In addition, an undue emphasis is placed by the Government on the lack of formalities. Deeply held convictions guided by moral or ethical beliefs can be made manifest without labeling war as "wrong" and peace as "right". The Government's search for formal statements of ethical or moral beliefs overlooks petitioner's expression of an opposition to war resulting from a belief in peace derived from religious influence and direction. It is clear that petitioner's beliefs were religious within the meaning of *Seeger* and *Welsh.*

■ Finally, the Government contends that a grant of petitioner's habeas corpus should be conditioned upon "petitioner's military judicial proceedings [being] completed." It is argued that petitioner's absence without authority was not related to petitioner's claim for conscientious objector status. Thus, petitioner should be subject to court-martial and the serving of any lawful sentence before a writ should issue from this court. See Parisi v. Davidson, 405 U.S. 34, 46 n. 15, 92 S.Ct. 815, 31 L.Ed. 2d 17 (1972).

But it is clear to us that petitioner's action in leaving the Navy without authority was certainly related to his conscientious objector beliefs and strong desire not to be involved in war. Petitioner testified at a hearing held by the court that he was told that he would be bound and shackled and involuntarily

taken to Vietnam if he did not follow his orders to report to McGuire Air Force Base for transport to Vietnam. It was after this that petitioner absented himself without authority.

It is only with great reluctance that I interfere with a decision that is ordinarily within the exclusive province of the military. For all the reasons set forth above, however, I conclude that the Bureau of Navy Personnel had no basis in fact for finding that Horace Laird Baldwin was not religious in his conscientious objection beliefs. Consequently, Baldwin's petition for a writ of habeas corpus shall be granted.