**Scott J. ROBY, Petitioner–Appellant,**

v.

**UNITED STATES DEPARTMENT OF the NAVY, Secretary; Commanding Officer, U.S. Naval Nuclear Power Training Unit in Idaho Falls, Idaho, Respondents–Appellees.**

No. 95–35377.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 1995.

Decided Feb. 16, 1996.

Jeffrey Wood, York, Pennsylvania, for petitioner-appellant.

D. Marc Haws, Assistant United States Attorney, Boise, Idaho, for respondents-appellees.

Before: WRIGHT, FERNANDEZ and KLEINFELD, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Twenty-one years ago in *Sanger v. Seamans,* 507 F.2d 814 (9th Cir.1974), we remarked on the conflicting interests at stake when a person serving in the armed forces decides that he is conscientiously opposed to war:

> [W]e must bear in mind that when a person enters into a contractual commitment with the government to serve his country, it is anticipated that he will fulfill his promise. The government has properly recognized, however, that a sincere conversion to principles dictating a conscientious objection to war may occur after a commitment to military service has been made.... The government not only has an interest in granting discharges to sincere conscientious objectors but also has an equal interest in preventing misuse of these procedures as a backdoor out of military service.

*Id.* at 816–17.

With these considerations in mind, we must determine whether the Navy had a basis in fact for denying Petty Officer Scott J. Roby's application for conscientious objector status. In doing so we must also decide whether "depth of conviction" should be an independent element of the test for conscientious objectors in this circuit. We have juris-

diction pursuant to 28 U.S.C. § 1291, and we affirm.

### I. *Background*

After graduation from high school, Roby joined the Naval Reserve. The following year he enlisted in the regular component of the Navy for a four-year period, which he later extended by two years to train in the Navy's Nuclear Power School and Prototype Unit. He is a Machinist Mate Second Class, a petty officer. He has consistently performed well and has received high marks on his periodic evaluations. His military obligation is scheduled to end in July 1997.

In 1993, Roby requested assignment to the aircraft carrier U.S.S. Abraham Lincoln. In January 1994, he received orders to report to the ship. In April, one month before he was to report for sea duty, he applied for a discharge as a conscientious objector.

Roby began considering pacifism in November or December of 1993 after reading *Johnny Got His Gun.* His beliefs developed as he read another book and anthology, watched two television documentaries about war and spoke with friends. In his application for conscientious objector status he described his new opposition to all forms of violence:

> I strongly believe that I cannot participate in war because of what war is. Pure and simple, war is violence.... I believe that violence is immoral because it is an abandonment of reason and clear thought.

> . . . . .

> . . . .

> I believe that at some time in everyone's life they begin to ask themselves questions about the lives they're living, what they're doing, and who they really are. These books and documentaries awakened questions like these in me.

He concluded, "I [know] with certainty that I [can] no longer be part of the military. The military depends on the use of violence to guarantee its survival...."

Pursuant to Navy regulations, *see* Naval Military Personnel Manual ("MILPERS-

MAN") 1860120,[1] several persons interviewed Roby about his application. The chaplain reported that he found Roby to be sincere, but questioned whether his depth of conviction was temporary. He recommended against granting conscientious objector status. The psychologist expressed no opinion as to whether the Navy should grant the petition, but did comment that Roby had made a "drastic turn-around," that he appeared to have been influenced by friends and that he was still trying to "find" himself.

Based on these interviews and on a hearing at which Roby was represented by counsel, the investigating officer recommended that the petition be denied because Roby lacked the required depth of conviction and had not shown that his beliefs were the "primary controlling force" in his life as required by military regulations. MILPERSMAN 1860120(14)(b). The commanding officer concurred, and the Chief of Naval Personnel officially denied the status change. Of the five or more persons who interviewed Roby or reviewed his file, not one recommended that the Navy grant his discharge application.

 Roby sought habeas corpus relief in federal district court. It denied the petition, finding that there was a basis in fact for the disapproval of his application. Roby argues on appeal that we should reverse because the investigating officer relied on improper considerations that do not constitute a basis in fact. Alternatively, he asks us to reject "depth of conviction" as part of the test for conscientious objectors. We first address what the proper test should be, then whether there was a basis in fact for the Navy's denial under that test.[2]

## ANALYSIS

### I. *Depth of Conviction*

 A conscientious objector has no constitutional or statutory right to be discharged from active service after voluntary enlistment. *Sanger*, 507 F.2d at 817; MILPERSMAN 1860120(1). We recognize, however, "a national policy ... not to subject bona fide conscientious objectors to combatant training and service in the armed forces." *Harris v. Schlesinger*, 526 F.2d 467, 469 (9th Cir.1975). Pursuant to this policy, the Department of Defense has developed procedures to discharge qualified applicants. *See* 32 C.F.R. § 75. Military branches may discharge an objector:

(1) Who is conscientiously opposed to participation in war in any form;

(2) Whose opposition is founded on religious training and beliefs; and

(3) Whose position is sincere and deeply held.

*Id.* § 75.5. The Navy's implementing regulation is similar. *See* MILPERSMAN 1860120(14) (belief must be "sincere and deeply held").[3]

1. A conscientious objector applicant first is interviewed by a chaplain, who submits a written report assessing the applicant's sincerity and depth of conviction. The applicant is then interviewed by a psychiatrist or clinical psychologist who determines whether there is any indication of mental disorder. The applicant's commanding officer then appoints a lieutenant commander to act as the investigating officer. The investigating officer reviews the entire record, conducts a hearing and makes a report and recommendation. Copies of all documents are given to the commanding officer and to the applicant, who may submit a rebuttal. The entire record is then given to the Chief of Naval Personnel, who makes the final recommendation. *See* MILPERSMAN 1860120.

2. At oral argument, we were informed that Roby may be absent without leave from the U.S.S. Abraham Lincoln. His possible absence does not affect the case's status as an adjudicable case or controversy, *Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970), but it does give this court discretion to refuse to decide the case based on a theory of disentitlement. *See, e.g., Johnson v. Laird*, 435 F.2d 493, 494 (9th Cir.1970) (tentatively dismissing appeal unless appellant reported to a military base within 30 days). Because we have no military confirmation that Roby is AWOL and because the Navy has not moved this court to dismiss, we decline to exercise our discretion to dismiss the appeal. *See United States v. Van Cauwenberghe*, 934 F.2d 1048, 1054 (9th Cir. 1991) (declining to dismiss case although appellant had fled the United States).

3. Both the Department of Defense directive and the Navy regulation also recognize beliefs that stem from deeply held moral, rather than religious, grounds. *See United States v. Seeger*, 380 U.S. 163, 176, 85 S.Ct. 850, 13 L.Ed.2d 733

■ At issue is the requirement that the applicant's belief be both sincere *and* deeply held. Roby's conscientious objector application was denied because he failed to demonstrate that his beliefs were "deeply held." He asks us to join the First and Eighth Circuits in rejecting depth of conviction as an independent element of the conscientious objector test.[4] *See Hager v. Secretary of the Air Force,* 938 F.2d 1449 (1st Cir.1991); *Kemp v. Bradley,* 457 F.2d 627 (8th Cir. 1972). We decline the invitation.

In *Kemp,* 457 F.2d at 629, the Eighth Circuit wrote:

'Depth of conviction' requires theological or philosophical evaluation. We think it unwise to adopt this more complex concept as the requirement which a Selective Service registrant or member of the Armed Forces must fulfill in order to qualify for conscientious objector classification.

In *Hager,* 938 F.2d at 1459, the First Circuit explicitly adopted the Eighth Circuit's reasoning, adding that when

the military undertakes to measure the depth with which the applicant holds [his] belief, we think the inquiry becomes an impermissible subjective look into his heart and soul. The question is, *does* he believe, not, *how deeply* does he believe.

*Id.* (emphasis in original). We do not find this reasoning persuasive as we explain below.

### A. *Military Deference*

We are puzzled by the lack of deference to the military's own regulation in *Hager* and

*Kemp.* Neither opinion considers whether the court has authority to disregard the military's test for conscientious objectors, but disregards it nonetheless. We recently discussed deference to military regulations in *Meinhold v. Dep't of Defense,* 34 F.3d 1469 (9th Cir.1994) (construing 32 C.F.R. § 41, App. A (1991) and MILPERSMAN 3630400(1) (1992)). We said:

As we consider the regulation in this case ... we are guided by [a] long-settled rule: The military's 'considered professional judgment,' is 'not lightly to be overruled by the judiciary.' ... Our review, therefore, is as deferential as our constitutional responsibilities permit.

*Id.* at 1476–77 (citations omitted).

We need not decide in this case whether our deference goes so far as to preclude even review to determine whether a regulation is a rational means to achieve a legitimate purpose. *Compare Turpin v. Resor,* 452 F.2d 240, 242 (9th Cir.1971) ("[I]nsofar as the wisdom or rationality of the [conscientious objector] regulation is concerned, the courts have nothing to say.")[5] *with Steffan v. Perry,* 41 F.3d 677, 684–85 (D.C.Cir.1994) ("It is hard to imagine a more deferential standard than rational basis, but when judging the rationality of a regulation in the military context, we owe even more special deference....."). We assume without deciding that rationality is required of the regulation.

■ Here, the regulation is not being challenged on constitutional grounds. At most, we are asked to disregard the test

---

(1965) (holding that applicant's objection need not be confined to traditional religious concepts).

4. Roby argues that the Fifth Circuit also has rejected the depth of conviction test. It not clear whether that circuit has completely abandoned the standard or whether it simply found it redundant in the cases before it. *See Kurtz v. Laird,* 455 F.2d 965, 967 (5th Cir.1972) ("[I]n this case we can ascribe no other meaning to the phrase 'lacks the depth of conviction required,' than that Kurtz lacks sincerity."); *Helwick v. Laird,* 438 F.2d 959, 964 (5th Cir.1971) ("[D]epth and maturity" test is "a verbalism without any real meaning in this factual context."). We believe that sincerity and depth of conviction are distinct requirements and that each addresses a relevant military concern.

5. In *Turpin,* we rejected a class-action challenge to the Army's rule that soldiers file conscientious objector application only at their permanent duty stations. Plaintiffs alleged that this inconvenience violated their rights to due process, equal protection and effective assistance of counsel. We wrote:

[W]e are dealing with a voluntary program initiated by the armed forces. The manner it chooses to implement that program lies within the discretion of the civilian and military heads of the Army. Of course the implementing regulations must be prescribed in a manner authorized by governing directives, and they must not work an invidious discrimination between races, religions, and the like....

452 F.2d at 241–42.

because it might be subjective,[6] *cf. Hager,* 938 F.2d at 1459, or difficult to apply,[7] *cf. Kemp,* 457 F.2d at 629. In the absence of some constitutional or statutory conflict, it is not clear that we have the power to set aside a regulation based merely on its subjectivity or difficulty of application. We do not believe that these are sufficient grounds for ignoring our usual deference to the military's internal regulations.

█ Furthermore, we believe that there is an important function served by having the applicant demonstrate that his beliefs are both sincere and deeply held. The regulatory term "sincere" distinguishes between military personnel who genuinely believe something, and those who lie about their beliefs. The term "deeply held" distinguishes, from among those who are telling the truth, those who feel strongly about their belief that participation in war is wrong, and those who do not. These inquiries are distinct.

█ This distinction applies well in Roby's case. His reviewers all thought Roby honestly believed that war was wrong. But they also thought that the recency and shallowness of the bases for his belief (a couple of books and movies) meant it was not a deeply held conviction. People sometimes have bursts of passion that amount to sincere convictions about their identities, loves, career choices, political preferences and other important matters, especially in their youth, all based on little or nothing and changing frequently. The military has a justifiable interest in ensuring that fleeting beliefs do not serve as a basis for ending one's service commitment.

## B. Ninth Circuit Precedent

The Ninth Circuit has often applied a "depth of conviction" requirement, which we have drawn from Supreme Court language and from military regulations. Although the Court does not specifically refer to deeply held beliefs in its description of the test for conscientious objectors,[8] it has discussed the depth of an applicant's conviction. In *Welsh v. United States,* 398 U.S. 333, 337, 90 S.Ct. 1792, 1795, 26 L.Ed.2d 308 (1970), the Court wrote:

> [the applicants'] objection to participating in war in any form could not be said to come from a 'still, small voice of conscience'; rather, for them that voice was so loud and insistent that both men preferred to go to jail rather than serve in the Armed Forces. There was never any question about the sincerity and depth of [their] convictions.

The Court specified that among those registrants who "obviously" could not receive exemption were "those whose beliefs are not deeply held." *Id.* at 342, 90 S.Ct. at 1797. *See also United States v. Seeger,* 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed.2d 733 (1965) (test for whether a personal moral code could rise to the level of religious objection "might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption. . . ."); *Witmer,*

---

**6.** Any test for conscientious objection is necessarily subjective, requiring at least a determination of the applicant's sincerity. *See Witmer v. United States,* 348 U.S. 375, 381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955) (recognizing that the determination of sincerity is "purely a subjective question."); *Bishop v. United States,* 412 F.2d 1064, 1067 (9th Cir.1969) ("the subjective state of a registrant's mind is simply not amenable to unerring objective determination.").

**7.** In an early conscientious objector case, the Supreme Court recognized that

> [f]ew would quarrel, we think, with the proposition that in no field of human endeavor has the tool of language proved so inadequate in the communication of ideas as it has in dealing with the fundamental questions of man's pre-

dicament in life, in death or in final judgment and retribution.

*Seeger,* 380 U.S. at 174, 85 S.Ct. at 858. The difficulty of applying a rule, however, does not mean it should be disregarded.

**8.** The Supreme Court has described the test for conscientious objectors as follows: the applicant must show (1) that he is conscientiously opposed to war in any form, not just to a specific war, (2) that his opposition is based upon religious training and belief or a comparable moral code and (3) that his beliefs are sincere. *Clay v. United States,* 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971); *see also Witmer,* 348 U.S. at 381, 75 S.Ct. at 395 ("[T]he ultimate question in conscientious objector cases is the sincerity of the registrant. . . .").

348 U.S. at 383, 75 S.Ct. at 396 (noting that applicant had failed to produce evidence of "his allegedly deeply felt religious convictions against participation in war.").

We have often applied a depth of conviction test based on the Court's language and military regulations. In *United States v. Coffey,* 429 F.2d 401 (9th Cir.1970), we held that "[o]nly two groups of registrants may be excluded from conscientious objector status: 'those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle....'" *Id.* at 404 (quoting *Welsh,* 398 U.S. at 342, 90 S.Ct. at 1797); *see also United States v. Hodgins,* 485 F.2d 549, 552 (9th Cir.1973) (conscientious objector denial can be "founded on a view that the [application] was legally insufficient or upon a finding of lack of sincerity or necessary depth of belief."). More recently, in *Woods v. Sheehan,* 987 F.2d 1454, 1457 (9th Cir.1993), which was decided after both *Hager* and *Kemp,* we quoted the "deeply held" language from the Marine Corps's implementing regulation.

### C. Conclusion

 Where a regulation is not being challenged on constitutional grounds we owe the military great deference. We have applied all elements of the military's conscientious objector test in this circuit over the past several decades. Based on these considerations, we will apply the Navy's requirement that the applicant show that his beliefs are deeply held.

## II. *Basis in Fact Review*

Roby argues in the alternative that the district court improperly denied his habeas petition because the Navy did not meet its burden of showing a basis in fact for rejecting his application. Specifically, he contends that the investigating officer relied on impermissible factors when he recommended against the status change.

 Assuming that Roby has made a prima facie showing that he is opposed to all wars, that his opposition is based on religious or moral training and belief, and that he is sincere in his beliefs, the military bears the burden of demonstrating a "basis in fact" for denying the application. *Woods,* 987 F.2d at 1456–57. Under basis in fact review, we must affirm if the record reveals "some proof that is incompatible with the applicant's claim." *Id.* at 1456. This standard has been described as the "narrowest review known to the law." *Id.* As the Supreme Court has cautioned, "[i]t is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence.... Nor should they look for substantial evidence to support such determinations." *Witmer,* 348 U.S. at 380–81, 75 S.Ct. at 395 (citations omitted).

 The investigating officer relied on four findings in support of his conclusion that Roby lacked depth of conviction and that his beliefs were not the primary controlling force in his life: (1) the chaplain's recommendation that the application be disapproved and his concern that Roby had held his beliefs for an insufficient length of time; (2) the psychologist's comment that Roby was influenced by his friends and still trying to "find" himself; (3) Roby's failure to point to any changes in his lifestyle; and (4) his impending transfer to sea duty. The officer did not doubt his sincerity.[9] Although there may be some problems with these findings individually, considered as a whole they create a basis in fact for the Navy's denial. *See Woods,* 987 F.2d at 1458 ("Each item by itself ... does not constitute a basis in fact. However, taken together they suggest that Woods' conscientious objection to war is not sincere and deeply held.").

 Several factors contraindicate a belief that has "directed his life in the way traditional religious convictions of equal

9. One official did doubt the veracity of Roby's personal references. Luther Alexander, Head of Favorable Separations Division, said that he would disapprove Roby's application. He based his disapproval, at least in part, on his finding that Roby's letters of support were "'curious.'" He noted that they "all appeared, for the most part, to come out of the same laser printer. Furthermore, the syntax of each letter was very similar." It is unclear what role Alexander played in the evaluation process. It does not appear that this recommendation had any effect on the Navy's ultimate decision to deny the application.

strength, depth and duration have directed the lives of those [who hold religious beliefs]" or that is "the primary controlling force in [his] life." 32 C.F.R. § 75.5(c)(1); MIL-PERSMAN 1860120. His beliefs are based only on his reading two or three books and watching two television documentaries. He does not plan to study further ("the time of book study is over for me"). The only change in lifestyle that he foresees (other than leaving the military) is possibly to write letters for Amnesty International on behalf of other conscientious objectors. If discharged, he plans to study photography. The investigating psychologist commented that Roby "has been influenced by his friends more strongly that [sic] he is willing to admit. . . . He is idealistic and an intellectualizer who is restless and still trying to 'find' himself." These factors could reasonably persuade an official to question how deeply Roby holds his convictions.

■ The timing of Roby's application also gives reason to doubt his conviction. After three years of active duty, Roby applied for conscientious objector status only when faced with deployment to an aircraft carrier. Although timing cannot be the only basis for rejecting a status change, it can lend doubt to the application. *Koh v. Secretary of the Air Force*, 719 F.2d 1384, 1386 (9th Cir.1983) (rejecting application where objector submitted her claim one month after receiving active duty orders); *Woods*, 987 F.2d at 1458 (denying discharge where objector filed application 10 days after receiving deployment orders).

■ Finally, the chaplain reported that Roby was sincere but that:

> I am concerned that it has only been three or four months since he has read the above mentioned book that he claims to be the catalyst for his beliefs. His depth of conviction may be temporary. . . . I believe that Petty Officer Roby has not had enough time to be convicted of his decision to request conscious [sic] objector status.

Length of time alone does not create a basis in fact for denial of a conscientious objector application. *Schuman v. United States*, 208 F.2d 801, 805 (9th Cir.1953). A rapid turn-around in beliefs, however, may be considered as a factor if other findings also support that conclusion. *Bishop v. United States*, 412 F.2d 1064, 1068 (9th Cir.1969).[10]

Although each of these factors standing alone arguably might provide an insufficient basis for denying Roby's application, the combination provides a basis in fact for the Navy's denial of Roby's conscientious objector application. *See Woods*, 987 F.2d at 1458.

## CONCLUSION

We AFFIRM the judgment denying Roby's petition for habeas corpus relief. His request for attorney's fees is DENIED.

---

**10.** The chaplain also commented that "[i]f his conviction continues for one year, I could be certain that his request is bona fide and sincere." The requirement that Roby hold his beliefs for a minimum of one year is not permissible. We consider only that Roby underwent a rapid conversion in combination with the other factors.